IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20924

_____

THE TRAVELERS INDEMNITY COMPANY;
THE TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT,

Plaintiffs-Counter Defendants-Appellees,

versus

CITGO PETROLEUM CORP.; CITGO
REFINING AND CHEMICALS, INC.,

Defendants-Counter Claimants-Appellants.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston

_____

January 29, 1999

Before GARWOOD and HIGGINBOTHAM, Circuit Judges.[1]

GARWOOD, Circuit Judge:

Plaintiffs-appellees Travelers Indemnity Company and Travelers

Indemnity Company of Connecticut (collectively, Travelers) brought

in the district court below this diversity action for declaratory

judgment seeking a determination of its duty to defend and

_____

[1]     Chief Judge King was a member of the oral argument panel to
which this case was assigned, but subsequently recused herself
prior to our decision herein, and the case is consequently decided
by a quorum.  18 U.S.C. § 46(d).

indemnify defendants-appellants Citgo Petroleum Corporation and Citgo Refining & Chemicals, Inc. (collectively, Citgo) under three insurance policies. Citgo counterclaimed for breach of the insurance contracts and violation of Texas insurance law. The district court granted summary judgment in favor of Travelers. Citgo appeals. We affirm.

### Facts and Proceedings Below

Travelers issued three insurance policies to Wright Petroleum (Wright): a business auto policy, a catastrophe umbrella policy, and a comprehensive general liability policy (CGL policy). Citgo, which had a form of franchise agreement with Wright (a wholesaler and retailer of petroleum products), was made an additional insured as to each of these policies by valid endorsement thereto.[2] The business auto and umbrella policies each contained provisions allowing Travelers to settle claims at its discretion, and stated that Travelers' duties under the policy would terminate when the applicable policy limits had been exhausted. The language used in the business auto policy was as follows: "We may investigate or settle any claim or suit as we consider appropriate. Our duty to defend or settle ends when the Liability coverage limit of insurance has been exhausted by payments of judgments or

---

[2] Travelers claims that Citgo Refining and Chemicals, Inc. was not properly covered under the CGL policy, since the endorsement for this policy named only "CITGO." Due to our resolution of the other issues in the case, we find it unnecessary to examine the scope of the endorsement.

2

settlements." The umbrella policy contains a similarly worded provision.

The underlying lawsuit that created the current dispute originated in a collision between one of Wright's tanker trucks and an automobile driven by Richard Friedrichs that occurred on October 10, 1992, in McAllen, Texas, and as a result of which both Friedrichs and the tanker truck driver, a Wright employee, were killed. At the time of the accident, the truck was carrying petroleum products for Citgo as well as several other oil companies and allegedly ran a red light at the intersection where the collision occurred. Later the same year, Friedrichs' survivors sued Wright in the 92nd Judicial District Court of Hidalgo County, Texas. Citgo was not then named as a defendant in the suit. Travelers, in accordance with the requirements of the business auto and catastrophe umbrella policy, conducted Wright's defense. On August 30, 1993, the plaintiffs presented a settlement demand. One day before expiration of the plaintiffs' offer, settlement for $1.5 million was agreed to. A disagreement later arose as to the wording of the release. On September 16, 1994, a release was executed releasing Wright, the estate of the tanker truck driver, and all others who were then named defendants in the lawsuit, in exchange for Travelers' tendering the full policy limits—$1.5 million dollars—of both the auto and the umbrella policies to plaintiffs. Citgo, which at that time was not and had never been named a defendant in the lawsuit and as to which plaintiffs had not

made any offer to settle, was not included in the release. It can be inferred that at least several months before September 1994, Travelers was aware that plaintiffs insisted on reserving their right to sue Citgo.

On September 29, 1994, the plaintiffs in the underlying suit amended their complaint to name as defendants Citgo and several other oil companies, charging them with negligence in continuing to deal with Wright when they knew or should have known of its inadequate safety standards. Citgo demanded a defense and indemnity from Travelers in the amended action. Travelers refused, citing the exhaustion of the policy limits of the business auto and umbrella policies and claiming that coverage under the CGL policy was barred by an exclusion regarding the operation of automobiles.

Travelers brought this diversity based declaratory judgment action in district court below seeking a determination that it had no duty to Citgo. Citgo counterclaimed for a declaration that Travelers was bound to defend and indemnify it under the policies and also claimed breach of contract for their failure to do so, fraudulent misrepresentation and unfair or deceptive trade practices under Texas law, breach of the duty of good faith and fair dealing, and negligence. Travelers moved for summary judgment and both parties requested that attorneys' fees be awarded to the prevailing party.

The district court granted Travelers' motion for summary judgment and awarded it attorneys' fees. Citgo appeals.

4

**Discussion**

I. Settlement Under the Auto and Umbrella Policies.

Central to all of Citgo's contentions regarding the auto and umbrella policies is its claim that under Texas law an insurer cannot favor one insured over another in obtaining settlements. By settling on behalf of Wright, Travelers favored Wright over Citgo and thus allegedly breached this duty. We conclude that this argument is without merit. Under Texas law, an insurer defending its insured on a covered claim owes that insured a tort law duty to accept a reasonable settlement offer within policy limits rather than unreasonably risk an adverse judgment substantially over the policy limits. Texas courts have also held that an insurer is free to favor a claim by one claimant over a claim by another claimant in pursuit of this duty. We find that the logic of these positions requires that an insurer be free to settle suits against one of its insureds without being hindered by potential liability to co-insured parties who have not yet been sued. Since we reject Citgo's invitation to create a special duty for insurers when multiple parties are covered under the policy, we also reject its contention that settling a claim in accordance with Texas law is a violation of the insurer's independent contractual duty to perform reasonably.

A. The *Stowers* duty and multiple insured parties.

In Texas, the basic tort duty for insurers facing settlement

5

offers is the *Stowers* duty. *See G.A. Stowers Furniture Co. V. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). Under *Stowers*, an insurer, defending an insured in a lawsuit on a covered claim, when faced with a settlement offer within policy limits, must accept the offer on behalf of its insured when an ordinarily prudent insurer would do so in light of the reasonably apparent likelihood and degree of that insured's potential exposure to a valid judgment in the suit in excess of policy limits. *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 848-49 (Tex. 1994). In this context, the *Stowers* duty is the only tort duty the insurer must comply with; the duty of good faith in handling insurance claims does not apply. *See Maryland Insurance Co. v. Head Industrial Coatings and Services, Inc.*, 938 S.W.2d 27, 28 (Tex. 1996).

The *Stowers* duty creates difficulties, however, when multiple parties and other potential claims in excess of policy limits are involved. In such cases, fulfillment of the *Stowers* duty will reduce the funds available to satisfy the claims of other plaintiffs or the defense of other insured parties. However, if insurers are subject to both liability for failure to settle under *Stowers* and liability for disparate treatment of nonsettling insureds, insurers would find the policy limits they carefully bargained for of little utility. Under *Stowers*, they would be obliged to settle up to the limit of a policy or face a lawsuit by

6

the covered insured as to whom the settlement within policy limits was offered. But if they in fact settled, they would leave themselves open to claims by the insureds excluded from the settlement, and any additional recovery would be in excess of the limits they had originally relied on.

The Texas Supreme Court has definitively resolved this dilemma in regards to claims by multiple plaintiffs. An insurer is allowed to fulfill its *Stowers* duty to its insured by settling with one claimant, even though the result is to leave the insured exposed to another claim. *See Texas Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994). In *Soriano*, an insurer opted to settle a relatively minor claim for twenty-five percent of the policy limit when a formal demand was served, despite indications that a settlement with a significantly larger claimant at the policy limit might have been possible. The court held that an insurer could only be liable for settling a claim if (a) they had previously rejected a valid settlement offer within policy limits from the other claimant or (b) the settlement they reached was unreasonable "considering *solely* the merits of the" settled "claim and the potential liability of its insured on" that "claim." *Id*. at 316 (emphasis added). Neither condition was met, so the insurer was entitled to settle the initial claim. Once the first settlement was reached, the insurer had no *Stowers* duty to settle, since the major claimant did not present a settlement offer within

7

the *remaining* policy limit.

Citgo attempts to distinguish *Soriano* by pointing out that an insurer owes a higher duty to its insured than it does to claimants. Thus, Citgo argues, while the lesser "duty" (if any) to claimants may allow an insurer to choose which claimant to settle with, a similar discrimination is not permitted when the interests of multiple insureds are at stake. While this may be correct as far as it goes, and *Soriano* is not directly applicable, we find the case persuasive in this instance because the party complaining in *Soriano* was not the second claimant—it was the insured. The insured argued that its insurer had settled the "wrong" claim, exposing him to personal liability in the more dangerous suit. *Id* at 314. *Soriano*, like the case before us, involved the insurer's duty to its insured.

Citgo next attempts to argue that the reference to reasonable settlement in *Soriano* allows a court to examine whether settlement was proper in light of all potential claims against all the insured parties. However, as noted, the *Soriano* court made it clear that reasonableness would only be measured by looking at the initial demand for settlement in isolation. *Id*. at 316 (The test is whether "a reasonably prudent insurer would not have settled the Lopez claim when considering solely the merits of the Lopez claim and the potential liability of its insured on the claim."). In *Soriano*, evidence that the larger claimant was willing to settle

8

within policy limits (but had not then made an offer) was deemed irrelevant in the absence of evidence that the settlement reached with the other claimant, considered alone, was unreasonable. *Id*. at 315-16. Citgo does not assert on appeal that Travelers' settlement on behalf of Wright was unreasonable—or that there is a fact issue in that regard—considering solely the merits of the settled claim and Wright's potential liability on that claim.

Two cases construing Texas law have addressed the resolution of the problem when multiple insureds, rather than multiple claimants, are involved. Like *Soriano*, they have stressed that an insurer is free to make a reasonable settlement of the claim before it without considering other possible claims affecting the same policy limits. In *American States Insurance Co. Of Texas v. Arnold*, a Texas court confronted a situation in which an insurer, having settled up to its policy limits and obtained a release on behalf of its named insured, refused to defend an additional insured in a separate action arising out of the same accident. 930 S.W.2d 196 (Tex.App.--Dallas 1996, writ denied) (Hankinson, J.). The excess insurer of the additional insured conducted the defense and sued the primary insurer to recover its costs. The court reversed summary judgment in favor of the excess insurer and rendered judgment for the original insurer, finding it breached no duty in obtaining the settlement, and its duties to the additional insured terminated when the settlement exhausted the policy limits.

9

"We conclude that, under the unambiguous policy language and circumstances of this particular case, American States's settlement of Cassady's personal injury claim against Mayes's estate for its bodily injury policy limits terminated any obligation to defend Arnold, as an additional insured, in the Cassady lawsuit." *Id*. at 202-03.

This Court has also to some extent addressed the question in a case involving the interpretation of an insurance policy under Texas law. *See Vitek, Inc. v. Floyd*, 51 F.3d 530 (5th Cir. 1995). In *Vitek*, the bankruptcy court had allowed a trustee to settle on behalf of the estate with the bankrupt's liability insurers, who pledged to remit the remainder of their policy limits to the estate for the benefit of the creditors. The bankruptcy court aided the settlement efforts by issuing injunctive orders protecting the insurers respecting other suits. A co-insured party objected, claiming that it would be barred by the settlement from suing the insurers for its policy rights, while being left exposed to suits. The district court blocked the settlement unless the co-insured party was extended protection under the injunction.

While the context of the case removed the need to discuss the specifics of *Stowers* and the exhaustion of policy limits, the insurance portion of *Vitek* dealt with the issue before this Court. The insurers in *Vitek* chose to craft a settlement that benefitted one of its insureds—exhausting their policy limits and in the

process leaving an exposed co-insured party without coverage under the policy. The district court required the injunction to be extended to the co-insured because it adopted the position Citgo urges, that an insurer cannot favor one insured over another. We rejected this contention, finding that a insurer was free to make such a settlement, although we held open the possibility that a co-insured party might have an action against the insurer for breach of good faith under these circumstances. *Id*. at 537-38. The Texas Supreme Court has since indicated that in such a context an action for breach of good faith against the insurer cannot be maintained. *See Maryland Insurance*, 938 S.W.2d at 28.

Citgo argues that *Vitek* and *Arnold* insufficiently considered contrary authority. While several out-of-state courts have found that there is a general duty not to favor one insured over another, the weight of contemporary authority is in line with *Arnold*. Citgo contends that *Smoral v. Hanover Insurance Co.* is the "leading case" supporting its position. 322 NYS2d 12 (N.Y.App. [1st Dept.] 1971). In *Vitek*, we specifically found that *Smoral* could only be read to permit actions for breach of the duty of good faith, which has since been barred in Texas by *Maryland Insurance*. *See Vitek*, 51 F.3d at 536-37. In any case, *Smoral* has not been followed outside of New York and the California Courts of Appeals.[3] Every other

---

[3] Three California courts have adopted an interpretation of *Smoral* akin to that urged by Citgo. *See Shell Oil Co. v. National Union Fire Ins. Co. Of Pittsburgh, Pa.*, 44 Cal. App. 4th 1633, 1645

court to consider the issue has rejected its application. *See Millers Mutual Ins. Association of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 869-871 (Mo. App. 1997) (Collecting cases and concluding that "[t]hese parties contracted for this insurance policy. The clause in question is unambiguous. . . . Had Shell desired additional language providing for a continuing duty to defend upon settlement for the policy limits on behalf of one insured, it could have required [the named insured] to obtain a different policy."); *Bohn v. Sentry Ins. Co.*, 681 F.Supp. 357, 365 (E.D. La. 1988), *aff'd* 868 F.2d 1269 (5th Cir. 1989); *Underwriters Guarantee Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 578 So.2d 34, 35 (Fla. App. 1991); *Country Mutual Ins. Co. v. Anderson*, 628 N.E.2d 499, 503-504 (Ill. App. 1993); *Pekin Ins. Co. v. Home Ins. Co.*, 479 N.E.2d 1078, 1081 (Ill. App. 1985); *Anglo-American Ins. Co. v. Molin*, 670 A.2d 194, 199 (Pa. Cmwlth. 1995).

Citgo also maintains that good policy requires that we go against *Arnold* and read our prior decision in *Vitek* narrowly. The *Soriano* court maintained that its rule would encourage settlements. *Soriano*, 881 S.W.2d at 315. Citgo argues that when multiple

---

(Cal.App., 2nd Dist. [Div.2] 1996); *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60 (Cal. App., 2d Dist. [Div.5] 1994); *Strauss v. Farmers Ins. Exch.*, 26 Cal. App. 4th 1017 (Cal. App., 1st Dist. [Div.4] 1994). Citgo's reliance on a Missouri case is misplaced—it dealt with apportionment of insurance proceeds after judgment against the insureds, not settlement. *See Countryman v. Seymour R-II School Dist.*, 823 S.W.2d 515 (Mo. App. 1992).

12

insured parties rather than multiple claimants are involved, the *Soriano* approach will discourage settlement.  This, Citgo asserts, is because the partial settlements obtained under an *Arnold* rule do not prevent continued litigation against the exposed co-insured, with the plaintiff now bankrolled by the proceeds of the settlement.  Thus, according to Citgo, the encouragement of partial settlement by *Arnold*'s rule discourages true, global settlement that would keep a case out of court entirely.  It is true that an *Arnold* rule may encourage a certain level of strategic behavior on the part of plaintiffs.  It would encourage plaintiffs to first sue defendants with inadequate resources, or defendants that had not only a large potential exposure but also a low probability of being found ultimately liable.

However, the *Soriano* court was also keenly sensitive to the plight of an insurer presented with a valid claim for settlement under *Stowers*.  "Had Farmers opted not to settle . . . but, in the face of that demand, to renew its offer [to the party with the larger claim] instead, Farmers would surely face questions about liability under *Stowers* for failing to settle [with the other, lesser claimant]."  *Soriano*, 881 S.W.2d at 315.  Citgo's position in essence means that fulfilling the *Stowers* duty by exhausting policy limits (or reducing them to a level inadequate for further settlement) triggers potential liability to any other insured that is not included in the settlement.   Thus under Citgo's proposal,

13

an insurer faced with liabilities of multiple insured parties that exceed its policy limits would face an excess liability threat regardless of whether it attempted to create a comprehensive settlement or acted as Travelers did here.[4]  Allowing the insurer to focus on only the claim actually before it, and rely on the bright-line test of *Soriano*, avoids this dilemma.

Moreover, while we recognize that the Travelers' position may lead to some strategic behavior on the part of plaintiffs, we are skeptical that the rule proposed by Citgo would better serve the policy goal of encouraging settlements in these cases.  In essence, Citgo is asking that settlement holdout power be given to each insured party, regardless of whether or not it has actually been sued.[5]  The difficulty with this position is readily apparent when one considers the type of situations in which *Stowers* intersects

---

[4]	Insurers faced with the rule Citgo proposes would either charge an extra premium to cover the enhanced risk of excess liability whenever multiple insureds are involved or  avoid such endorsements entirely.  This result may not be in the best interest of insured parties as a class, and in any case does nothing to remove the burden on insurers who have negotiated the terms of policies in reliance on the effectiveness of policy limits.

[5]	If Citgo's rule were adopted, the only rational course for insurers would be to formally or informally make all their insureds parties to any settlement negotiations.  No insurer would settle at its policy limits with potential excess liability to a disgruntled co-insured lurking in the background.  And because the proposed "no insurer may favor one insured over another insured" rule would seem to come into play whenever any party received a larger percentage of the policy coverage than another, in practice any settlement would have to be backed by an agreement amongst *all* the insureds regarding liability or a judicial allocation.

14

with multiple insured policies to produce the dilemma seen here. A valid *Stowers* demand in the context of multiple insureds requires that the settlement offer be reasonable and the insured party reasonably fear liability over the policy limit. In other words, for the issue to come up at all there usually has to be an objective possibility that the liability of at least *one* of the insureds would ultimately exceed the policy limits.

It is almost certain, then, that no happy compromise will emerge that can settle the case for *all* of the insureds within the policy limits. Whatever litigation an *Arnold* rule produces will not come at the expense of readily available comprehensive settlements. The mandatory interjection of new parties and new issues into settlements that Citgo's rule would likely produce seems calculated to increase the costs of negotiations and decrease the likelihood of their ultimate success.[6]

At all events, we are unconvinced that Citgo's arguments concerning the policy implications of *Arnold* justify our calling into question the weight of persuasive Texas precedent. We decline to carve out an exception to *Soriano's* general rule when an insurer is faced with hypothetical claims against a co-insured party,

---

[6] The public interest in abetting settlement is solely concerned with the saving of litigation costs that it produces. *Garcia*, 876 S.W.2d at 851. If holdout problems under Citgo's suggested rule produce some situations where the entire dispute must be taken to court by all of the parties, this increase in litigation costs may outweigh the price of an *Arnold* rule even if the latter produces a larger number of cases that go to trial.

rather than a hypothetical settlement offer from a another claimant against the same insured party.  Accordingly, we follow *Arnold* and hold that under Texas law an insurer is not subject to liability for proceeding, on behalf of a sued insured, with a reasonable settlement, as defined in *Soriano* at 316, once a settlement demand is made, even if the settlement eliminates (or reduces to a level insufficient for further settlement) coverage for a co-insured as to whom no *Stowers* demand has been made.[7]

B. Reasonable performance of the contract

Nor do we find Citgo's argument in the alternative that Travelers did not act reasonably in the face of the settlement demand persuasive.  As noted, Citgo does not contend that Travelers' settlement on behalf of Wright was unreasonable under the *Soriano* test, namely "considering solely the merits of the" plaintiffs' claims against Wright "and the potential liability of" Wright on those claims.  *Id*. at 316.  Further, Citgo now concedes that there is no tort duty of good faith and fair dealing in a third party claimant cases.  *See Maryland Insurance*, 938 S.W.2d at 29.  While Citgo mentions that Texas insurance statutes may create an independent duty to act reasonably, it has not directed us to any relevant statute.  However, Citgo claims that there is an independent contractual duty to act reasonably in performing the

---

[7]     We do not address the duties of an insured faced with multiple and concurrent outstanding separate *Stowers* demands as to different insureds where the demands in total exceed the policy limits.

16

contract.  The decision to exhaust the policy limits by settling on behalf of Wright is claimed to have violated that duty.  Citgo also complains that Travelers acted unreasonably by ignoring the notice provisions of the contract, not investigating plaintiffs' intentions in regard to Citgo, and representing Wright in a separate action that Citgo filed against Wright following the settlement.

Travelers' argument that it acted reasonably in performing the contract is straightforward.  Under *Soriano* and the explicit language of the policy, Travelers had a right to settle when it was presented with a demand within its policy limits.  Indeed, Travelers apparently had a *Stowers* duty to Wright to settle as it did; Citgo does not contend to the contrary.  Further, under Texas law, an insurer's duty to defend an insured is only triggered by the actual service of process upon its insured and its relay to the insurer.  *See, e.g., Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466-67 (Tex.App.--Dallas 1991, no writ).  At the time of the settlement, this duty on Travelers' part had arisen as to Wright, a defendant in the lawsuit, but not as to Citgo, which had not then been sued.  However, Citgo contends that the duty to defend and the duty to indemnify are separate, and the facts surrounding the case could trigger the latter, even though the duty to defend Citgo was not yet implicated.  This is incorrect.  While a party may have a duty to defend but ultimately determine there is no duty to

17

indemnify, without a predicate triggering of the duty to defend, indemnification does not arise. *See Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 82-84 (Tex.1997). Once this settlement had exhausted the policy limits, the provisions of the policy terminated Travelers' duties under the contract, including its duties to Citgo as a co-insured.[8] Since Travelers was entitled—indeed apparently required—to settle the initial claim against its insured, and since Citgo has not alleged that the settlement, standing alone, was unreasonable, we find that the decision to settle on behalf of Wright constituted reasonable performance of the contract as a matter of law.

In light of the inevitability of settlement given the choice of the plaintiff in the underlying suit to defer suit against Citgo and our interpretation of the *Soriano* rights in this situation, we find that any deficiency in the notice given to Citgo or the investigation done by Travelers was harmless. Even if notice had been given and the intention of the plaintiffs in the underlying suit were clear, Citgo would have found invocation of the policy impossible prior to its exhaustion and termination. The filing of one motion on behalf of Wright in its post-settlement dispute with Citgo by a lawyer furnished Wright by Travelers was similarly

---

[8]    The relevant policy language from the auto policy provides: "We may investigate or settle any claim or suit as we consider appropriate. Our duty to defend or settle ends when the Liability coverage limit of insurance has been exhausted by payments of judgments or settlements."

18

harmless. At that point, Travelers had exhausted the policy limit and had no obligation to either Citgo or Wright. That the lawyer Travelers furnished Wright briefly continued to represent its former insured Wright and thereby came into conflict with its former insured Citgo is not shown to have caused any harm to Citgo as a result of any conflict of interest which might conceivably be involved in such a situation.

II. Comprehensive General Liability Policy

Citgo also challenges the district court's finding that the accident was not covered under its Comprehensive General Liability policy. Resolution of this issue hinges on the interpretation of the exclusion clauses of that policy. Under Texas law, an insurance contract will be not be construed neutrally unless it is susceptible of only one reasonable construction. If multiple interpretations are reasonable, the court must construe the contract against the insurer, and this applies with special force when exceptions to liability are examined. *See Western Heritage Ins. Co. v. Magic Years Learning Centers and Child Care, Inc.*, 45 F.3d 85, 88 (5th Cir. 1995) (Texas law).

The district court found Citgo's recourse to the CGL policy was barred by the policy's auto exclusion—which is defined to include the truck involved in the accident.[9] The exclusionary

---

[9] The policy definitions clearly provide that the truck involved in the accident qualifies as an "auto" for the purposes of this clause, and Citgo does not contest this.

19

clause reads:

> "This insurance does not apply to 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'"

The initial response to Citgo's challenge to this determination is to ask what an auto exclusion can possibly be for, if it is not applicable to a truck running a red light, crushing a car, and killing its occupant, as the underlying plaintiffs consistently alleged was the cause of the accident and Friedrichs' death in their complaints, both as against Wright and subsequently as against Citgo.

The policies that Citgo and Travelers bargained for here were interlocked and mutually exclusive. The applicable language in the business auto policy providing its coverage is virtually identical to the language of the CGL excluding coverage.[10] Some accidents would be covered by the auto policy, others by the CGL. A single accident could not be covered by both. While we recognize that

---

[10] The business auto policy provides for coverage of suits for bodily injury or property damage "caused by an accident and arising from the ownership, maintenance or use of a covered auto." For liability purposes, "covered auto" is stated by the business auto policy to include all vehicles owned by the named insured. The endorsement that included Citgo defined Citgo as an insured "but only for his, her, or its liability because of acts or omissions of an 'insured.'" Wright was the named insured, so Citgo would thus be covered under the business auto policy if it became liable for anything arising from the ownership, maintenance, or use of an auto owned by Wright. This coverage language in the business auto policy essentially tracks the exclusionary clause of the CGL policy.

20

parties are allowed to make arguments in the alternative, no one—least of all Citgo, if our resolution of Travelers' duties under the auto policy had been otherwise—would seriously argue that Citgo is not covered under the auto liability policy. Yet Citgo strenuously argues that it also is entitled to CGL coverage and the auto exclusion in the CGL policy does not apply.

Citgo argues for the first time on appeal that the severability clause in the CGL policy precludes its being excluded from coverage on the basis of the acts of another insured. We find that the circumstances of this case do not allow an exception to the general rule that we will not examine untimely arguments and deem this contention waived. *See Atlantic Mut. Ins. v. Truck Insurance Exchange*, 797 F.2d 1288, 1293 (5th Cir. 1986) (legal theory relying on exclusion clause in insurance policy waived when not raised below). Citgo thus is left with its continued insistence that the plaintiffs' claims in the underlying suit against Citgo, as opposed to their claims against Wright, do not relate to the ownership, maintenance, entrustment, or use of an auto, but rather are general allegations of negligence that exceed the scope of the CGL auto exclusion clause. Therefore, Citgo argues, the CGL policy provides it coverage.

Citgo first argues that because it did not own the truck (and the truck was not operated by it or rented or loaned to it) and did not use or maintain the truck or entrust it to another, and the

21

plaintiffs' pleadings in the underlying suit do not allege otherwise but rather allege that the truck was owned, operated, and used by Wright, that therefore the CGL's auto exclusion clause does not apply to the claims against Citgo. We disagree. We find that a reading of the CGL policy's auto exclusion clause as a whole indicates that it serves to exclude the claims against Citgo insofar as they derive from the use, operation, or ownership of the truck by Wright. The clause does not require that the defendant in the lawsuit own, operate, or rent the vehicle. Rather, it requires that "any insured" own, operate, or rent the vehicle, and that the injury arise out of the use of that vehicle. Wright was an insured party—indeed the named insured—in the CGL policy, and the accident and resulting death of Friedrichs clearly arose, and was alleged by plaintiffs in the underlying suit against Citgo to have arisen, out of Wright's use of Wright's truck.

The fact that the alleged wrongs with which the underlying plaintiffs' pleadings charge Citgo[11] do not directly include its

_____

[11] The amended complaint naming Citgo in the underlying lawsuit specifically accuses Citgo and other defendant petroleum companies of improperly checking on the qualifications of Wright's drivers, not enforcing the same safety standards on Wright's drivers that they applied to their own fleets when they handled delivery to franchisees, and continuing to deliver petroleum and allow Wright access to their facilities even though they knew its drivers were incompetent. The underlying plaintiffs' complaint is not alleging some kind of abstract psychic harm traceable to Citgo's failure to follow statutory and company policies in these respects; it is arguing that this failure was a cause of the truck's being improperly operated by Wright and thus a cause of the accident and resultant injury.

22

ownership, maintenance, use, or entrustment of the truck does not mean that the damages sought by those pleadings do not arise out of Wright's ownership, use, maintenance, or entrustment of the truck. The underlying plaintiffs' pleadings against Citgo specifically allege that: Friedrichs was killed when at an intersection in McAllen the automobile he was driving was struck by Wright's truck being driven by Wright's employee in the course and scope of his employment for Wright; that the collision resulted from the truck driver's disregarding and running the red light controlling the intersection; and that the truck driver was "obviously, visibly and physically legally incompetent and unfit to operate his vehicle," which Citgo knew or should have known.[12] When determining whether an insurer has a duty to defend, Texas courts focus on the factual allegations underlying the claimed injury, not the legal theories involved. *See Nat. Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (reversing denial of summary judgment for insurer when no facts in the complaint touched on covered conduct). The complaint in the underlying lawsuit rests as to Citgo on charges of failure to consistently apply corporate safety standards to franchisees, negligently allowing Wright access to its products and facilities, and failure to meet statutory standards of conduct in those

---

[12] There is no allegation that any of the products being carried by the truck had anything to do with Friedrich's death or the collision.

23

respects. But the factual basis for all the claims against Citgo, as reflected in the pleadings of the underlying plaintiffs, is as follows: that the damages sought are for Friedrichs' death; that his death was caused by Wright's truck, being driven by its employee in the course of his employment, striking the automobile being driven by Friedrichs at the intersection; that this collision was caused by Wright's truck driver's disregarding and running the red light at the intersection; that this was the result of the truck driver's being incompetent and unfit to operate the truck; that if Citgo had exercised its asserted right and duty to oversee Wright's transportation of Citgo products, and had intervened when it knew or should have known Wright was employing substandard truck drivers, including this driver, the truck would not have been operated improperly as it was on the occasion in question and so the collision would not have occurred. The "conduct" charged to Citgo—not preventing Wright's negligent operation of the truck—as well as the damages for the death caused by the truck's running into the automobile, plainly arise out of the use of the truck, and hence are within the automobile exclusion of the CGL policy.

We recognize that Texas courts will allow claims against an insured to proceed when two separate and independent "but for" causes of the injury sued on—one excluded under the policy and one not—are involved. Thus, the fact that a hospital's negligent supervision of a mental ward might be excluded by a professional conduct clause was irrelevant when a jury found that the failure to

24

secure windows in the ward—which clearly was not excluded—was an independent proximate cause. *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (Texas law). Similarly, the negligent maintenance and handling of a handgun was an independent cause of a shooting death, so that the fact the accident incidentally involved the excluded act of repairing a car did not prevent coverage. *Warrilow v. Norrell*, 791 S.W.2d 515, 526 (Tex.App.--Corpus Christi 1989, writ denied). *See also Waseca Mutual Ins. Co. v. Noska*, 331 N.W.2d 917, 921 (Minn. 1983) (auto exclusion could not bar recovery when trial court found act of loading barrels with live embers was independent cause of fires).

Here, there can be no doubt that but for the negligent driving of the truck, there would be no lawsuit. The plaintiffs in the underlying lawsuit are not complaining that Citgo's alleged negligence was a separate or independent proximate cause of the harm—it is not alleged, for example, that the accident may have been caused or Friedrichs' injuries exacerbated by Citgo's delivery of fuel that spontaneously combusted. Rather plaintiffs argue that Citgo had a right and responsibility to oversee the Wright drivers and could have prevented the negligent driving of this Wright driver by exercising that power. This Court, construing Texas law, has found that when allegations of antecedent negligence are related to the underlying conduct giving rise to the suit, rather than creating a separate, independent cause of the injury, the fact

that the conduct that created the injury is excluded conduct under the policy defeats coverage. "We find that Texas law is clear: where a claim against an insured would not exist 'but for' conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy, regardless of whether the insured against whom the derivative claims are directed actually engaged in the excluded acts." *Cauntillo Independent School District v. Nat. Union Fire Ins. Co. Of Pittsburgh*, 99 F.3d 695, 704-05 (5th Cir. 1995)*. See also Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86, 89-90 (5th Cir. 1993) ("Dr. Roberts' intentional acts and his negligent acts converge. The allegations are not mutually exclusive; rather, they are related and interdependent. Without the underlying sexual molestation there would have been no injury and obviously, no basis for a suit against Dr. Roberts for negligence.").

Texas courts agree. *See Fidelity Guaranty Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 790 (Tex. 1982) (rejecting argument that negligent entrustment of automobile was a separate cause of accident not covered by exclusion when there would have been no accident without the negligent use of the auto, clearly excluded under the policy); *Burlington Ins. Co. v. Mexican American Unity Council*, 905 S.W.2d 359, 363 (Tex.App.--San Antonio 1995, no writ) (finding that assault and battery exclusion prevented coverage despite allegations that youth home was negligent in

allowing resident to leave complex—"the origin of her damages is the assault and battery, which is not separate and independent from the alleged negligence of MAUC."); *Centennial Ins. Co. v. Hartford Accident and Indemnity Co.*, 821 S.W.2d 192,194 (Tex.App.--Houston 1991, no writ) (negligent hiring of employee could not have caused injury without employee's negligent operation of car). *Cf. Grinell Mutual Reinsurance Co. v. Employers Mutual Casualty Co.*, 494 N.W.2d 690, 694 (Iowa 1993) (school's negligent supervision of the loading of a bus was not excluded vehicle-related conduct and could have been found a separate proximate cause). Here, the cause of the accident was Wright's negligent operation of the truck on October 10, 1992, in McAllen. Without that negligence of Wright's, any antecedent error in Citgo's handling of its transportation arrangements with Wright could not have caused the injury. Citgo's liability, if any, was necessarily derivative, not separate and independent. Accordingly, we hold that under Texas law, Travelers properly denied coverage to Citgo under the comprehensive general policy.

III. The Award of Attorneys' Fees

Lastly, Citgo challenges the award of attorneys' fees to Travelers. Travelers brought this suit in federal court as a declaratory judgment action. The Federal Declaratory Judgement Act, 28 U.S.C. § 2202, does not itself independently authorize the award of attorney's fees. The Texas Declaratory Judgement Act

27

does, however.  Tex. Civ. Prac. & Rem. Code §§ 37.001 *et. seq*. Subsequent to the district court's judgment, this Court ruled that the Texas Act is procedural rather than substantive, and therefore it does not authorize an award of costs in a federal court declaratory judgement diversity action.  *See Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).[13]  In the court below, Citgo not only failed to challenge the award of attorneys' fees to the prevailing party, but also requested them on its own behalf on the same basis it now asserts is invalid.  Accordingly, we find that under the circumstances of this case any argument against the award of attorneys' fees has been waived.

### Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Travelers.

AFFIRMED

---

[13]  *Utica* is not a departure from the prior law of this Circuit, but is instead a logical application of previously stated principles.