# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 6, 2013

Lyle W. Cayce
Clerk

No. 11-10892

PRIDE TRANSPORTATION, a Utah Corporation

Plaintiff-Appellant,

versus

CONTINENTAL CASUALTY COMPANY, an Illinois Corporation;
LEXINGTON INSURANCE COMPANY,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Texas
No. 4:08-CV-7

Before DAVIS, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Pride Transportation ("Pride") appeals a summary judgment for its pri-
mary and excess insurers, Continental Casualty Company ("Continental") and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-10892

Lexington Insurance Company ("Lexington"), alleging that the insurers breached their contracts by failing to continue to defend and indemnify Pride after settling a claim, against an employee, that had exhausted the policies. In addition, Pride alleges that the insurers' handling of the settlement violated Texas Insurance Code Section 541.060. Because Pride failed to raise a genuine issue of material fact as to either claim, we affirm.

## I.

In October 2006, in Wise County, Texas, Krystal Harbin, a driver for Pride, struck Wayne Hatley's pickup truck when Hatley slowed down for a dust cloud caused by a gravel spill. The impact caused Hatley to collide with a crane truck; he was severely injured and is a paraplegic with limited use of his upper extremities.

Pride is a large-fleet interstate motor carrier headquartered in Utah. It carried a primary insurance policy issued by Continental with a limit of $1 million and an excess policy with Lexington for $4 million. Harbin was named as an additional insured on both policies, which covered defense and indemnity until funds were exhausted by payments of judgments or settlements.

## II.

Hatley and his wife sued Harbin and Pride, among others, in state court in Wise County for negligence, seeking damages for medical expenses, loss of earnings, physical impairment, disfigurement, pain and mental anguish, loss of household services, and loss of consortium. As the primary insurer, Continental stepped in to defend Pride and Harbin and began investigating the accident.[1]

---

[1] While discovery was ongoing, the assigned adjuster left Continental. All business related to the Hatley claim was routed to the Case Unit Manager in the interim month before
(continued...)

2

No. 11-10892

Harbin's counsel estimated the value of the case as $8-10 million, and Pride's counsel acknowledged the "real possibility" that liability was over $5 million. Hatley's medical expenses alone exceeded the primary policy limits. The Hatleys' counsel had recently won jury verdicts in Wise County for over $25 million in similar cases; and the insured parties recognized that there was a risk of high jury verdicts in that forum. Counsel, representing both Pride and Harbin at the time, reported to Continental in January 2007 that it might be worthwhile to seek an early settlement, although more investigation was needed.

During Harbin's April 2007 deposition, it became clear that she had falsified her driver logs to avoid restrictions on the hours she could work.[2] That fact caused concern for increased exposure to liability. Pride's separate counsel admitted that Harbin would be a bigger target for liability than would Pride. In about May 2007, Lexington told Pride that the claim might exceed the excess policy's limits.

In June 2007, Harbin received a settlement demand from the Hatleys for the total of the policies, $5 million (the "Harbin Settlement"); in exchange for that sum, the Hatleys would release Harbin from liability. The Hatleys' demand expressly noted that Pride was not included in the Settlement.[3] Relatedly, Harbin would remain exposed to any cross-claims for indemnity pursued by Pride. The deadline to accept the demand was July 20, 2007.

Because the sum was larger than the primary policy, Continental had to

---

[1] (...continued)
a new adjuster was hired.

[2] At this point, Continental assigned separate counsel to Harbin and Pride.

[3] The demand stated, "This demand shall in no way release Plaintiffs' claims asserted against Pride Transport either for its direct negligence or for its responsibility under the *respondeat superior* or statutory employer doctrine."

tender the $1 million to Lexington in order for Lexington to respond to the demand. Pride requested that Continental complete the tender, hoping that would allow Lexington to seek a counter-offer. Continental tendered on July 17,[4] after which Lexington took control of the defense and asked the Hatleys' counsel to consider a settlement that included Pride; the Hatleys refused.

Pride opposed accepting the Harbin Settlement and asked Lexington to put a formal counter-offer in writing for a release of both insureds for $5 million. Lexington informed Pride and Harbin that a counter-offer would need to be agreed to by both insured parties. Harbin rejected that proposal and demanded Lexington accept, which it did on July 20.

The insurers notified Pride that, because the policies were exhausted, they would withdraw their defense of Pride.[5] On August 28, Lexington sued in the United States District Court for the Northern District of Texas (the "Northern District") for a declaratory judgment regarding its coverage obligations to Pride.

On August 30, Pride filed a cross-claim for indemnity against Harbin in the Hatleys' underlying suit.[6] On August 31, Pride sought a declaratory judgment in Utah state court that the insurers had an ongoing duty to defend and indemnify it in that case. The declaratory-judgment action was removed to Utah

---

[4] Continental continued its defense of Pride until the tendered funds were paid to the Hatleys.

[5] In January 2009, the Hatleys and Pride settled. Pride agreed to pay the Hatleys $2 million, with additional payments conditioned on Pride's recovery against the product-manufacturer defendants and the insurers. The Hatleys' total settlement recovery from all defendants, including Harbin and Pride, was slightly less than $9 million. The Harbin Settlement was the largest settlement.

[6] Pride non-suited the claim against Harbin two months later. In about February 2009, Pride filed a new indemnity claim in Wise County against Harbin. In March 2009, Pride gave Harbin $10,000 for the assignment of all claims Harbin might have against the insurers (but did not release Harbin from any indemnity claims by Pride). Pride then filed an additional claim against Continental and Lexington as Harbin's assignee, for refusing to indemnify Harbin against Pride's cross-claims. That case was removed to the Northern District, where it has been stayed.

No. 11-10892

federal court, then transferred to the Northern District in January 2008.

Lexington and Continental counter-claimed.[7] Pride's amended complaint alleged breaches of contract, fiduciary duty, good faith and fair dealing, and violation of the Texas Insurance Code. The district court granted summary judgment for the insurers, denied Pride's Federal Rule of Civil Procedure 59(e) motion to alter or amend, and granted Continental's motion to alter or amend for attorney's fees.

Pride appeals the summary judgment, arguing that there is a genuine issue of material fact whether the insurers (1) breached their contracts by failing to continue to defend and indemnify Pride after the Harbin Settlement exhausted the policies and (2) violated Section 541.060 of the Texas Insurance Code by their handling of the Settlement. Pride also appeals the dismissal of its motion to alter or amend.

### III.

"We review a summary judgment *de novo*, applying the same standard as the district court." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). Furthermore, "it is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record."[8]

This case is in federal court on diversity jurisdiction, so Texas substantive

---

[7] Lexington dismissed its declaratory-judgment action.

[8] *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (citing *United States v. Dunigan*, 555 F.3d 501, 508 n.12 (5th Cir. 2009)).

No. 11-10892

law governs. *Packard v. OCA, Inc.*, 624 F.3d 726 (5th Cir. 2010). This court looks to the decisions of the Texas Supreme Court to determine Texas law, and where that court has not ruled, the panel "must determine, to the best of our ability, what the highest court of the state would do."[9] Although the decisions of the intermediate state courts of appeals are not binding precedent in this regard, they can be instructive. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 566 (5th Cir. 2010).

Insured parties have limited recourse against insurers in Texas for the handling of third-party insurance claims. There is no duty of good faith and fair dealing owed to the insured in this context—common law duties are limited to contractual obligations and the *Stowers*[10] duty to accept a reasonable settlement demand.[11] In Texas, an insurer is liable under *Stowers* for rejecting a demand where

> (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment.

*Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). "[A] *Stowers* settlement demand must propose to release the insured fully in exchange for a stated sum of money." *Id.* at 848.

In *Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994), the

---

[9] *Packard*, 624 F.3d at 730 (quoting *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005)).

[10] *Stowers Furniture Co. v. Am. Indemnity Co.*, 15 S.W.2d 544 (Tex. 1929).

[11] *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003) (citing *Md. Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 28 (Tex. 1996) (superseded in part by statute)); *see also Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007); *Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92, 97–98 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

court concluded "that when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." The reasonableness of the settlement is determined "considering solely the merits of the [settled claim] and the potential liability of its insured on [that] claim." *Id.* at 316. In *Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761 (5th Cir. 1999), we interpreted Texas law to extend *Soriano* to cases with multiple insured defendants; we held that "an insurer is not subject to liability for proceeding, on behalf of a sued insured, with a reasonable settlement . . . once a settlement demand is made, even if the settlement eliminates . . . coverage for a co-insured as to whom no *Stowers* demand has been made." *Id.* at 768.

The insurer cannot be liable for failing to settle remaining claims "unless there is evidence that either (1) [the insurer] negligently rejected a demand from the [claimant] within policy limits; or (2) the [initial settlement demand] was itself unreasonable." *Soriano*, 881 S.W.2d at 315. The test for whether the settlement was unreasonable invokes the same standard as did *Stowers*: "that a reasonably prudent insurer would not have settled the [initial] claim when considering solely the merits of [that] claim and the potential liability of its insured on the claim." *Id.* at 316.

The parties agree that the insurers did not reject any demands for Pride or Harbin. Instead, this case involves the insurers' liability for accepting a demand. Although the *Stowers* duty imposes liability on insurers who reject reasonable demands covered under their policies, we decline to use this case, as Pride wishes, to extend the *Stowers* duty to impose liability on insurers for accepting demands.

Pride's common-law claims thus must rest on the insurers' contractual duties. The parties do not dispute that the insurers are absolved of their duty

7

No. 11-10892

to defend an insured party once the policy has been exhausted by judgments or settlements; nor do they gainsay that the insurers have a contractual right to settle claims as they deem appropriate.[12] The parties also agree that the Harbin Settlement exhausted both policies.

The dispute at the heart of Pride's breach-of-contract claim is that the insurers' acceptance of the Harbin Settlement was unreasonable in violation of the policies and that, as a result, the insurers were never dismissed from their contractual duties to defend Pride. Notably, Pride does not contend that the Settlement was *per se* unreasonable because the Insurers settled for Harbin and not Pride.[13] Instead, Pride attempts to distinguish the instant case from *Citgo* and *Soriano*, in which the reasonableness of the other insured's settlement was undisputed.[14] Pride asserts that the reasonableness of the Settlement is a question of fact for a jury and not appropriate for summary judgment.

Pride focuses on *Stowers*, arguing that the Settlement was not a valid *Stowers* demand, so the insurers lose their defense for accepting. Pride asserts that, in the absence of a safe harbor, the reasonableness of the Settlement, which left Harbin and Pride open to further liability, presents a question of fact. Though the insurers likely would have faced *Stowers* liability had they rejected

---

[12] Continental's policy states that "[w]e may investigate and settle any claim or 'suit' as we consider appropriate." Lexington's policy states that "[w]e will defend any suit against the Insured alleging liability insured under the provisions of this policy . . . but we will have the right to make such investigation and negotiation and settlement of any claims or suits as may be deemed expedient by us."

[13] *See Citgo*, 166 F.3d at 768; *see also Am. States Ins. Co. of Tex. v. Arnold*, 930 S.W.2d 196, 202 (Tex. App.—Dallas 1996, writ denied).

[14] *See, e.g., Citgo*, 166 F.3d at 768 ("Once this settlement had exhausted the policy limits, the provisions of the policy terminated Travelers' duties under the contract, including its duties to Citgo as a co-insured. Since Travelers was entitled—indeed apparently required—to settle the initial claim against its insured, and since Citgo has not alleged that the settlement, standing alone, was unreasonable, we find that the decision to settle on behalf of Wright constituted reasonable performance of the contract as a matter of law.").

the Hatleys' demand, *see Soriano*, 881 S.W.2d at 315, this court does not need to determine whether there was a valid *Stowers* demand.

"Under *Soriano* and the explicit language of the policy, [the insurers] had a right to settle when [they were] presented with a demand within [their] policy limits." *Citgo*, 166 F.3d at 768. Because Pride does not allege that the insurers negligently rejected a demand that included Pride, the insurers can be liable to Pride only if the Harbin Settlement was unreasonable. *See Soriano*, 881 S.W.2d at 315. "To be unreasonable, [Pride] must show that a reasonably prudent insurer would not have settled the [Harbin] claim when considering solely the merits of the [Harbin] claim and the potential liability of its insured on the claim." *Id.* at 316.

Pride's only argument that the Harbin Settlement is unreasonable rests on the residual liability Harbin faces in an indemnity claim by Pride. That argument fails to create an issue of fact on reasonableness, because the Lexington policy explicitly exempts claims or suits brought by one insured against another.[15] "[A]n insurer has no duty to settle a claim that is not covered under its policy." *Garcia*, 876 S.W.2d at 848. This court also interpreted Texas law in *St. Paul Fire & Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F.3d 340, 345 (5th Cir. 1999), rejecting the notion "that the insurer has a duty to consider claims that are excluded from coverage when making its determination of whether a settlement is reasonable."

In the absence of liability on the part of Harbin to her former employer, Pride fails to create an issue of fact as to the reasonableness of the Settlement. *See Citgo*, 166 F.3d at 765. Because of the likelihood and degree of potential exposure to excess judgment for Harbin, the Settlement was reasonable as a

---

[15] Although a full release is required to trigger a *Stowers* demand, we need not determine whether the Settlement satisfies, or even if it is required to satisfy, that prerequisite.

No. 11-10892

matter of law and did not result in a breach of the insurance contracts.[16]  The evidence showed that Harbin falsified her driver logs in order to make deliveries on time; Wayne Hatley was a paraplegic with limited use of his upper extremities and facing lifetime medical costs over $4 million; the Hatleys' lawyer had obtained jury verdicts of about $25 million in Wise County for similar accidents; and counsel for Pride and Harbin had estimated a case value exceeding the insurance coverage.  As the district court stated, "*Stowers*-duty bound or not, the insurers' acted reasonably in accepting the Hatleys' demand despite the fact that Pride remained exposed." *Pride Transp. v. Cont'l Cas. Co.*, 804 F. Supp. 2d 520, 530 (N.D. Tex. 2011).

IV.

"A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[17]  We generally review for abuse of discretion the denial of a Rule 59(e) motion. *Schiller*, 342 F.3d at 566.

Pride filed a Rule 59(e) motion to alter or amend after the grant of summary judgment, asserting that the district court erred in its failure to consider, as part of the reasonableness inquiry, the terms of the Settlement that expressly excluded Pride's liability for Harbin's conduct.  Pride relies on an opinion from

---

[16] Continental also argues that it cannot be liable for the Settlement, because it had no control after tendering its policy limits to Lexington.  Because there is no fact issue as to the reasonableness of the Settlement, we do not need to address Continental's liability as a primary insurer.

[17] *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotations omitted) (citing *Rosenzweig v. Azuriz Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)).

the Southern District of Texas[18] that was decided after the instant summary judgment was granted. Without deciding whether that decision is persuasive authority, we note that nothing in *Tristar* suggests that the district court *a quo* denied Pride's motion based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

*Tristar* is similar to the present case in that it involved an insurer that settled on behalf of some of the insureds, exhausting the policy and leaving Tristar without coverage. Unlike the Hatleys, however, the plaintiffs in the underlying lawsuit in *Tristar* made an initial demand that would have released all the defendants, including Tristar. *Tristar*, 2011 WL 2412678, at *1. After rejecting the first demand, the insurers accepted a second offer that released all the insureds except Tristar. *Id.* The court denied summary judgment as to the insurer's *Stowers* liability for rejecting the first demand. Considering not just the terms of the initial demand but also the accepted demand, the court held that the reasonableness of the first demand was a disputed question of fact. *Id.* at *4.

Pride seeks to rely on *Tristar* for the proposition that, when determining reasonableness in cases involving multiple insured parties, this court should consider the demand's terms regarding the liability of all insured parties. Unlike the plaintiffs in *Tristar*, however, the Hatleys never made a settlement demand that included Pride, nor is the instant case about the insurers' *Stowers* liability for rejecting a demand. The district court did not abuse its discretion in denying Pride's motion to alter or amend.

---

[18] *Am. W. Home Ins. Co. v. Tristar Convenience Stores, Inc.*, No. H-10-3191, 2011 WL 2412678 (S.D. Tex. June 2, 2011).

No. 11-10892

V.

Pride contends that the district court erred in granting summary judgment for the insurers on Pride's claim under Section 541.060(a)(2) of the Texas Insurance Code § 541.060(a)(2), which makes it "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance" to "fai[l] to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a claim. Pride alleges that the insurers violated their statutory duty of good faith and fair dealing by not settling Harbin's liability to Pride.

The good-faith duty under Section 541.060 is triggered only where "(1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it." *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 77 S.W.3d 253, 255 (Tex. 2002) (interpreting a previous version of the statute). Texas imported the common-law standard from *Stowers*, holding that, unlike many jurisdictions, "in Texas, the common law imposes no duty on an insurer to accept a settlement demand in excess of policy limits or to make or solicit settlement proposals." *Id.* at 261.

We can assume *arguendo* that the Harbin Settlement triggered duties under Section 541.060: The policies covered the Hatleys' claim against Harbin; Harbin's liability was reasonably clear; the demand was within the policy limits of $5 million;[19] and as determined already, the terms of the Harbin Settlement were such that an ordinarily prudent insurer would accept them.[20] The question

---

[19] Continental argues that it is not liable under Section 541.060 because the demand was not within the primary policy limit of $1 million. We decline to determine whether Continental would be exempted from liability as the primary insurer, because we hold neither insurer to have violated its statutory duty.

[20] We note that under Pride's theory, Section 541.060 would not be triggered as to the
(continued...)

12

No. 11-10892

is whether Pride raised an issue of material fact as to the insurers' good-faith effort to effect a prompt, fair, and equitable settlement.

As to Lexington, Pride only speculates, without evidence, that Lexington's sole mission was to extricate itself from the case as quickly as possible. "In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."[21]

Pride attempts to create an issue of fact as to Continental's good faith by offering that the claim was without a claims adjuster for a month, and Continental did not immediately tender its policy limits to Lexington. Neither of these facts is sufficient to defeat summary judgment. Although there was a month during which a permanent adjuster was not assigned to the Hatleys' claims, the unit manager at Continental handled all interim claims resulting from the accident, and the Hatleys did not make a demand until after the adjuster had been replaced. As for the date of Continental's tender to Lexington on July 17, 2007—before the deadline—Pride offers no evidence that Continental was acting in bad faith. To the contrary, Continental produced evidence that it was preparing the defense and completing due diligence until the tender.

The summary judgment is AFFIRMED.

---

[20] (...continued)

Harbin Settlement, because Pride argues the demand's terms were not reasonable so as to create a *Stowers* demand. *See Rocor*, 77 S.W.3d at 262 (adopting the *Stowers* standards to apply to Section 541.060).

[21] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (superseded by statute on other grounds).