OPINION
 

 Opinion by
 

 Justice MAZZANT.
 

 Employers Mutual Casualty Company (Employers) appeals the take-nothing summary judgment rendered in favor of St. Paul Insurance Company (St.Paul) on Employers’ suit against St. Paul for reimbursement of claims against the parties’ mutual insured. Employers brings five issues asserting the trial court erred by granting St. Paul’s motion for summary judgment and denying Employers’ motion. We affirm the trial court’s judgment.
 

 BACKGROUND
 

 Employers insured Hanna Construction, Inc., a contractor for road maintenance, under a commercial general liability (CGL) policy. Hanna subcontracted the road striping job to Striping Technologies, Inc. (STI). STI was insured by St. Paul under an auto liability policy and a CGL policy. Hanna required that STI make Hanna an additional insured under STI’s CGL with St. Paul.
 

 On July 15, 1998, STI’s road-work convoy was in Smith County on 1-20 eastbound marking the location for the yellow stripe on the inside lane next to the center median. The convoy consisted of the trucks that performed the road marking and two “supply truek[s]/erash truck[s].” The supply truck/crash truck (crash truck) bringing up the rear of the convoy was a 1985 Volvo flat-face truck. This crash truck had a flatbed on the back with a cargo grate around it, an arrow board on the back, and a crash barrier. At the time of the accident, the driver of the rear crash
 
 *898
 
 truck had stopped the truck and taken it out of gear just before the crest of a hill while he waited for the road-marking trucks to start climbing the next hill. The speed limit was 70 miles per hour, and the driver of the crash truck observed several vehicles nearly hit his truck. Suddenly, the truck driver saw a red blur and braced as a Suburban drove into the crash barrier at full speed. The Suburban driver, Gary Hudman, and one of his passengers, Er-cille Hudman, were killed, and the other passenger, John Hudman, was seriously injured. They sued STI and Hanna for negligence.
 

 STI settled with the Hudmans for one million dollars, the policy limit of its auto insurance policy with St. Paul. Hanna settled with the Hudmans for $625,000 paid from its CGL policy with Employers. Employers then asserted it was subrogat-ed to Hanna’s right to reimbursement as an additional insured under the St. Paul CGL policy issued to STI. Employers sued for a declaratory judgment that St. Paul had a duty to reimburse Employers for funds it paid on behalf of Hanna in settlement of the
 
 Hudman
 
 lawsuit.
 

 Both sides moved for traditional summary judgment. St. Paul asserted the coverage was excluded by the CGL policy’s auto exclusion and because the policy limits of all St. Paul policies had already been paid. The trial court granted St. Paul’s motion, denied Employers’ motion, and entered judgment that Employers take nothing.
 

 STANDARD OF REVIEW
 

 The standards for reviewing a traditional summary judgment are well established. Tex.R. Civ. P. 166a(c);
 
 Sysco Food Servs. v. Trapnell,
 
 890 S.W.2d 796, 800 (Tex.1994);
 
 Nixon v. Mr. Prop. Mgmt. Co.,
 
 690 S.W.2d 546, 548-49 (Tex.1985). In deciding whether there was a fact issue raised to preclude summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant’s favor.
 
 Limestone Prods. Distrib., Inc. v. McNa
 
 mara, 71 S.W.3d 308, 311 (Tex.2002);
 
 Nixon,
 
 690 S.W.2d at 548-49. On appeal, the movant must show there is no material fact issue and that the movant is entitled to judgment as a matter of law.
 
 Limestone Prods. Distrib., Inc.,
 
 71 S.W.3d at 311. When both sides move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews both sides’ summary judgment evidence, determines all questions presented, and renders the judgment that the trial court should have rendered.
 
 Holy Cross Church of God in Christ v. Wolf,
 
 44 S.W.3d 562, 566 (Tex.2001). When a trial court’s order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious.
 
 FM Props. Operating Co. v. City of Austin,
 
 22 S.W.3d 868, 872 (Tex.2000).
 

 For a defendant to prevail on summary judgment, he must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiffs cause of action or establish each element of an affirmative defense as a matter of law. Tex.R. Civ. P. 166a(c);
 
 Black v. Victoria Lloyds Ins. Co.,
 
 797 S.W.2d 20, 27 (Tex.1990). Only after the defendant produces evidence entitling him to summary judgment does the burden shift to the plaintiff to present evidence raising a fact issue on the elements negated.
 
 City of Houston v. Clear Creek Basin Auth.,
 
 589 S.W.2d 671, 678 (Tex.1979);
 
 Muckelroy v. Richardson Indep. Sch. Dist.,
 
 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied).
 

 
 *899
 
 ST. PAUL’S CGL POLICY
 

 St. Paul’s CGL policy contained the following statement of general coverage of liability for bodily injury and property damage:
 

 Bodily injury and property damage liability. We’ll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:
 

 • happens while this agreement is in effect; and
 

 • is caused by an event.
 

 The policy stated that
 
 “Event
 
 means an accident including continuous or repeated exposure to substantially the same general harmful conditions.” In explaining who qualified as a “protected person,” the policy stated, “Your employees are protected persons only for work done within the scope of their employment by you.”
 

 The policy contained the following auto exclusion:
 

 Auto. We won’t cover bodily injury, property damage or medical expenses that result from the:
 

 • ownership, maintenance, use or operation;
 

 • loading or unloading; or
 

 • entrustment to others;
 

 of any auto owned, operated, rented, leased or borrowed by any protected person.
 

 But we won’t apply this exclusion to bodily injury, property damage or medical expenses that result from the:
 

 • parking of an auto on any premises you own, rent, lease or borrow, or on ways next to such premises, if the auto isn’t owned rented, leased or borrowed by any protected person; or
 

 • operation of specialized equipment.
 
 Auto
 
 means any land motor vehicle, trailer or semitrailer designed for travel on public streets or roads. It includes any permanently attached machinery or equipment. But we won’t consider mobile equipment to be an auto.
 

 Mobile equipment
 
 means any land vehicle that:
 

 • is kept for use only on or next to premises you own, rent or lease;
 

 • travels on crawler treads;
 

 • is kept primarily for the ready movement of permanently attached construction equipment; or
 

 • doesn’t travel under its own power and is kept primarily for the ready movement of permanently attached specialized equipment.
 

 Mobile equipment includes any land vehicle not described above that’s kept primarily for purposes other than carrying people or cargo. But we won’t consider such a vehicle to be mobile equipment if it:
 

 • travels under its own power;
 

 • is operated like an auto during travel on a public street or road; and
 

 • has permanently attached specialized equipment; or
 

 • has permanently attached equipment designed for snow removal, street cleaning, or street or road maintenance — but not construction or resurfacing.
 

 Construction equipment
 
 includes any grader, scraper, roller or power crane, shovel, loader, digger or drill.
 

 Specialized equipment
 
 means any:
 

 • cherry picker or similar device used to lift workers;
 

 • pump, generator or air compressor; or
 

 • other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.
 

 
 *900
 
 ANALYSIS
 

 In this case, it is undisputed that the Hudmans’ injuries were the result of an event—an accident—that happened while the policy was in effect. Thus, the incident falls within the general coverage provision.
 

 We next must determine whether coverage is excluded by the auto exclusion. The auto exclusion states that the policy does not cover bodily injury, property damage, or medical expenses that result from the use or operation of any auto owned or operated by any protected person. It is undisputed that STI owned the crash truck and that its employee was operating the crash truck. Employers argues that the auto exclusion does not apply because, it asserts, the accident did not arise from the use of the crash truck as an “auto,” and it disputes that the crash truck was an “auto.”
 

 Employers argues, “Although the Hud-mans’ impact with STI crash truck may have caused the deaths and injuries, they were not caused by the use or operation of the crash truck as a vehicle.” Employers asserts the Hudmans’ deaths and injuries were instead caused by the use of the crash truck as a “stationary steel barricade,” and by STI’s failure to use appropriate warning systems to safely guide the traffic around the work zone.
 

 The supreme court has used the following three-prong test to determine whether an injury arises out of the use of a motor vehicle for purposes of auto liability insurance coverage:
 

 (1) the accident must have arisen out of the inherent nature of the automobile as such,
 

 (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated,
 

 (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.
 

 Mid-Century Ins. Co. v. Lindsey,
 
 997 S.W.2d 153, 157 (Tex.1999) (quoting 8 Couch on Insurance 3d § 119.37 (1997)).
 

 Employers argues the accident does not meet this test. Employers first argues the accident did not arise out of the inherent nature of the truck as such and that the use of the truck had terminated because the truck was stopped on the freeway when the Hudmans drove into it. Employers argues the truck was being used as a barrier, not a vehicle. We disagree. The truck was being used to transport the driver, the crash barrier, and the flashing arrow sign when the Hudmans drove into it. Although the truck was not moving and was not in gear when the Hudmans drove into it, the truck was still being used to transport the driver, crash barrier, and sign at the time of the accident.
 

 Employers next argues the truck merely contributed to cause the condition producing the injury and did not itself produce the injury. According to Employers, what caused the accident was not the truck but STI’s failure to provide warning and traffic diversion around the crash truck and the work convoy. Thus, Employers argues, the crash truck was merely the locational setting for the accident and not its cause.
 

 Employers asserts this case is similar to
 
 LeLeaux v. Hamshire-Fannett Independent School District,
 
 835 S.W.2d 49 (Tex.1992). In
 
 LeLeaux,
 
 a school girl hit her head while trying to close the back door of a school bus.
 
 Id.
 
 at 50. The girl jumped from the ground into the rear doorway of the bus. She mistakenly thought she was inside the doorway, and when she straightened up, she hit her head on the door frame.
 
 Id.
 
 at 51. When the girl hit her head, the bus was parked, its engine was not running, and the bus driver was not on the bus.
 
 Id.
 
 The supreme court stated the girl did not jump back into the bus to take
 
 *901
 
 her seat.
 
 Id.
 
 The supreme court concluded the girl's injury did not “arise[] from the operation or use of a motor-driven vehicle,” which would have waived the school district’s governmental immunity under the Tort Claims Act; instead, the court concluded that “[t]he bus was nothing more than the place where Monica happened to injury herself.”
 
 Id.
 

 Employers argues that the crash truck, like the bus in
 
 LeLeaux,
 
 was simply the place where the accident happened. Employers asserts,
 

 while idling in park the truck was not performing the work of transportation, but instead obviously served as a source of power for the flashing arrow board. Moreover, the fact that [the driver] chose to remain in the track was simply happenstance; he could have just as easily, for example, stretched his legs in the median, or walked the short distance to the crest of the hill to observe the STI work crew.
 

 We disagree. The fact that the crash truck was stopped is not determinative of whether it was being used or operated.
 
 See Denton v. State,
 
 911 S.W.2d 388, 389-90 (Tex.Crim.App.1995);
 
 Stagg v. Tex. Dep’t of Pub. Safety,
 
 81 S.W.3d 441, 444-45 (Tex.App.-Austin 2002, no pet.). The crash truck was transporting the driver, the crash barrier, and the flashing arrow board at the time of the accident. The driver was in the truck, the engine was running, and the driver was waiting to drive the crash truck over the crest of the hill when the accident occurred. We conclude the crash truck was not merely the place where the accident happened. Instead, the evidence establishes the accident was caused by the use of the crash truck as an “auto.” It was the truck’s presence on the roadway and the decision to stop the track in the left lane in fast-moving traffic that resulted in the accident.
 

 Employers also asserts that coverage is not barred by the auto exclusion because the Hudmans’ lawsuit alleged non-vehicular negligence, including the failure to properly warn the traffic of the stopped crash truck and the work convoy’s presence through signs, lane closures, etc. When a plaintiff alleges multiple independent “but for” claims of injury, some of which are excluded and some which are not, the insurer is subject to the independent claims that are not excluded.
 
 Travelers Indem. Co. v. Citgo Petroleum Corp.,
 
 166 F.3d 761, 771 (5th Cir.1999);
 
 see Fid. & Guar. Ins. Underwriters, Inc. v. McManus,
 
 633 S.W.2d 787, 790 (Tex.1982) (insured’s negligent entrastment of vehicle was not cause of injury independent of driver’s negligence);
 
 Warrilow v. Norrell,
 
 791 S.W.2d 515, 525-26 (Tex.App.-Corpus Christi 1989, writ denied).
 
 [1]
 
 In this case, the underlying plaintiff alleged that STI and Hanna were negligent by instructing
 
 *902
 
 an employee to stop the crash truck in the fast lane of a busy highway without adequate warning and traffic control. The facts in this case, however, conclusively establish that the accident was caused by the “use or operation” of the truck by stopping it in the fast lane of a busy highway; the failure to provide adequate warnings and traffic control were causes dependent upon the use or operation of the truck and were not independent causes of the accident. But for the “use or operation” of the truck, there would not have been an accident.
 
 Cf. Fid. & Guar. Ins. Underwriters, Inc.,
 
 633 S.W.2d at 790 (when liability from use or operation of vehicle is excluded, liability from negligent entrustment of vehicle is also excluded because “there would have been no accident in this case without the negligent operation or use of ... [the] vehicle”).
 

 Employers also argues the auto exclusion does not apply because the crash truck was “specialized equipment.” St. Paul’s CGL policy provides that the auto exclusion “won’t apply ... to bodily injury, property damage or medical expenses that result from the ... Operation of specialized equipment.” Specialized equipment is defined in the policy as “cherry picker or similar device used to lift workers; pump, generator or air compressor; or other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.” In this case, it is undisputed that the crash truck did not have a “cherry picker or similar device used to lift workers,” and the crash truck was not a “pump, generator or air compressor.” Thus the, issue is whether the operation of the crash truck constituted operation of “other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.”
 

 The crash truck did not constitute “other equipment” under the definition of “specialized equipment.” The types of “other equipment” listed in the definition of “specialized equipment” (building cleaning, geophysical exploration, etc.) are all equipment that participate in the performance of the actual work. The crash truck did not participate in the marking of the road; with its flashing arrow board, the truck warned the traffic of the lane blockage. Employers argues the crash truck was “other equipment” because it must have had a generator for the flashing arrow board and an air compressor for the crash barrier’s pneumatic lift. The record contains no evidence of how the flashing arrow board and crash barrier were powered. However, even if they required electricity and compressed air to operate, the record contains no evidence that the crash truck had “a
 
 built-in
 
 pump, generator, or air compressor.” (Emphasis added.) We conclude Employers has failed to show the “specialized equipment” exception to the auto exclusion applies to the crash truck.
 

 Employers also argues the auto exclusion does not apply because the crash truck constituted “mobile equipment.” St. Paul’s CGL policy stated, “we won’t consider mobile equipment to be an auto.” The definition of “mobile equipment” in the policy gave specific examples of mobile equipment and then included a catch-all category. The crash truck did not fit any of the specific examples because (1) it was not kept for use only on or next to STI’s premises; (2) it did not travel on crawler treads; (3) it was not kept primarily for the ready movement of permanently attached construction equipment (the flashing arrow board and crash barrier are not “construction equipment” as defined by the policy); and (4) it travels under its own power and is not kept primarily for the
 
 *903
 
 ready movement of permanently attached “specialized equipment.”
 

 The catch-all provision for mobile equipment states, “Mobile equipment includes any land vehicle not described above that’s kept primarily for purposes other than carrying people or cargo.” Employers argues the crash truck fits this definition because “the truck traveled under its own power, operated on public roads like a regular auto, and had permanently attached equipment, for purposes of the definition’s exception to its exception, that equipment was designed for use in road resurfacing projects.” However, regardless of whether the flashing arrow board and crash barrier were “equipment designed for use in road resurfacing projects,” the crash truck, with its flatbed and cargo grate, was designed to carry cargo, and nothing in the record shows the crash truck involved in the accident was “kept primarily for purposes other than carrying people or cargo.” We conclude Employers has failed to show the mobile-equipment exception to the auto exclusion applies to the crash truck.
 

 We hold the trial court did not err in granting St. Paul’s motion for summary judgment on the ground that St. Paul’s liability under its CGL policy was precluded by the auto exclusion. Because Employers’ motion for summary judgment was premised on the existence of coverage under St. Paul’s CGL policy, we hold that the trial court did not err in denying Employers’ motion for summary judgment. Since the auto exclusion supports the summary judgment, we need not reach the ground asserting exhaustion of the policy limits.
 
 Star-Telegram, Inc. v. Doe,
 
 915 S.W.2d 471, 475 (Tex.1995).
 

 We affirm the trial court’s judgment.
 

 [1]
 

 . In
 
 Warrilow,
 
 the underlying parties were riding in a vehicle that got a flat tire.
 
 Warrilow,
 
 791 S.W.2d at 517. The defendant was carrying a pistol. The pistol had a defect allowing it to fire when dropped, but the defendant had not repaired the defect. The defendant also had a bullet in the chamber under the hammer, which was shown to be negligent behavior.
 
 Id.
 
 at 518. The parties got out of the vehicle, and the defendant removed his fully loaded pistol from his holster to set it inside the vehicle while helping to change the tire.
 
 Id.
 
 at 517. However, the defendant dropped the pistol, which went off, killing the plaintiff.
 
 Id.
 
 The defendant’s insurance policy excluded coverage for loading and unloading a vehicle or performing maintenance on a vehicle.
 
 Id.
 
 at 518. The court of appeals concluded coverage was not excluded because the injury to the plaintiff from the defendant’s negligence in not having the pistol repaired and in failing to have an empty chamber under the hammer caused the plaintiff's injury, and these acts of negligence were independent of the act of loading or unloading the vehicle or changing the tire.
 
 Id.
 
 at 526.