COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ROBERTO DIAZ, JR., INDIVIDUALLY AND AS NEXT FRIEND OF ROBERT C. DIAZ, A MINOR, | § | No. 08-07-00357-CV |
| | § | Appeal from |
| Appellant, | | |
| | § | 171st District Court |
| v. | | |
| | § | of El Paso County, Texas |
| THE CANUTILLO INDEPENDENT SCHOOL DISTRICT, | § | (TC # 2007-212) |
| Appellee. | § | |

**O P I N I O N**

Roberto Diaz, Jr., individually and as next friend of Robert C. Diaz, appeals from an order granting a plea to the jurisdiction filed by the Canutillo Independent School District. At issue is whether negligent parking constitutes the use or operation of a motor vehicle as contemplated by the Texas Tort Claims Act. On these facts, we conclude it does not.

**FACTUAL SUMMARY**

Diaz filed a negligence cause of action alleging that his son, Robert C. Diaz, was seriously injured while playing touch football on a playground owned by CISD. Diaz alleged that Robert was injured when he ran into a parked vehicle which had been negligently parked by an unknown employee "in the area of the school playground." Robert's right eye is blind as a result of the injury.

CISD filed a plea to the jurisdiction asserting that it is immune from Diaz's personal injury claims because the motor vehicle was not being "used" or "operated" and merely furnished the condition that made the injury possible. CISD attached Diaz's answers to a request for admissions

establishing that the motor vehicle was empty, parked, and stationary, with the engine disengaged. Diaz filed a response but did not tender evidence. The trial court granted the plea to the jurisdiction and dismissed Diaz's claims. This appeal follows.

## WAIVER OF SCHOOL DISTRICT'S SOVEREIGN IMMUNITY

Diaz challenges the trial court's ruling by three issues. First, he argues that we should only look to the pleadings to determine if he sufficiently alleged a waiver of sovereign immunity. Second, he contends that the act of parking a motor vehicle constitutes use or operation of a motor vehicle. Third, he maintains that his pleadings sufficiently state a nexus between the alleged negligent act and the child's injuries.

### Standard of Review

In his first issue, Diaz claims that we can look only to the pleadings in reviewing the trial court's ruling on the plea to the jurisdiction. We disagree. A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law which we review *de novo*. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Similarly, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law subject to *de novo* review. *Id*. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228. This standard generally mirrors that of a summary judgment under TEX.R.CIV.P. 166a(c). *Id*.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 226. However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider

relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. In this case, the relevant evidence submitted in connection with CISD's plea is undisputed. Contrary to Diaz's assertion, our review is not restricted to his pleadings. We overrule Issue One.

*Use or Operation of a Motor Vehicle*
*and the Nexus Requirement*

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Texas Department of Transportation v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). The Texas Tort Claims Act provides a limited waiver of sovereign immunity. TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.001-.109 (Vernon 2005 and Vernon Supp. 2009). Sovereign immunity includes two distinct principles, immunity from liability and immunity from suit. *Miranda*, 133 S.W.3d at 224; *Jones*, 8 S.W.3d at 638. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224. The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." *Miranda*, 133 S.W.3d at 224, *quoting* TEX.CIV.PRAC.&REM.CODE ANN. § 101.025(a). Thus, CISD is immune from suit unless the Tort Claims Act expressly waives immunity. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.001(3)(B)(defining a governmental unit to include a political subdivision of this state, including any school district).

Section 101.021 provides that:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

> (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.021. But the Tort Claims Act also provides: "Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district." TEX.CIV.PRAC.&REM.CODE ANN. § 101.051. Thus, a school district is immune from tort liability unless a personal injury arises out of the use or operation of a motor vehicle. The term "use" has been defined to mean "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux v. Hamshire-Fannett Independent School District*, 835 S.W.2d 49, 51 (Tex. 1992). The term "operation" is defined to mean "a doing or performing of a practical work." *Id.*

The phrase "arises from" requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment. *LeLeaux*, 835 S.W.2d at 51. This requires more than mere involvement of the property. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). The vehicle's use or operation must have actually caused the injury. *Id.* The operation or use of the motor vehicle does not cause injury if it merely furnishes the condition that makes the injury possible. *Id.*

Diaz readily admits that his suit is based on a school district employee's negligent parking or placement of the motor vehicle in question. Nevertheless, he contends that parking necessarily constitutes use or operation of a motor vehicle because it is inherent to its use and operation. In

support of this argument, he directs us to *Employers Mutual Casualty Company v. St. Paul Insurance Company*, 154 S.W.3d 910 (Tex.App.--Dallas 2005, no pet.). There, a "crash truck" which carried the crash barrier and flashing arrow board was located at the rear of a road-work convoy. The driver stopped the crash truck near the crest of a hill while waiting for the trucks in front of it to start climbing the next hill. The crash truck was rear-ended while it was stopped but still running. The issue on appeal was whether insurance coverage was excluded by the provision that the policy did not cover bodily injury, property damage, or medical expenses resulting from the use or operation of any auto owned or operated by any protected person. Employers argued that the crash truck was being used as a steel barricade, not as an auto. *Id.* at 914. The Dallas Court of Appeals held that whether the truck was stopped was not determinative of whether it was being used or operated as an auto. *Id.* at 915. The crash truck was transporting the driver, the crash barrier, and the flashing arrow board at the time of the accident. The driver was in the truck, the engine was running, and the driver was waiting to drive over the crest of the hill when the accident occurred. *Id.* The truck was not merely the place where the accident occurred; instead it was the truck's presence on the roadway and the driver's decision to stop the truck in the left lane of fast-moving traffic that resulted in the accident. *Id.* *Employers* is clearly distinguishable because it did not involve the Tort Claims Act. Further, the undisputed evidence here demonstrates that the motor vehicle was not being operated by anyone at the time of Robert's injury.

Citing *Finnigan v. Blanco County*, 670 S.W.2d 313 (Tex.App.--Austin 1984, no writ), Diaz also contends that a motor vehicle can be used or operated even when it is unoccupied. In *Finnigan*, a deputy sheriff parked his patrol car near the jail's exercise yard and left the motor running while he went inside. The deputy knew the jail's only prisoner had access to the exercise yard. The prisoner escaped, got into the car, and fled the area. The get-away vehicle was then involved in a

fatal collision after the officers gave chase. The court of appeals held that the use or operation of a motor-driven vehicle involves the transportation of a person from one place to another and necessarily includes stopping the vehicle and leaving the motor running. *Id.* at 316. *Finnigan* is readily distinguishable because the motor vehicle was not running at the time of Robert's injury.

Diaz next suggests that the negligent placement of the vehicle can constitute use or operation. In *Dallas Area Rapid Transit v. Willis*, 163 S.W.3d 814 (Tex.App.--Dallas 2005, pet. denied), a woman fell as she exited a bus. She filed suit alleging that the bus driver was negligent in failing to properly stop the bus close enough to the curb for her to exit safely. The Dallas Court of Appeals held that the use or operation of a motor vehicle involves the transportation of individuals from one location to another and such transportation necessarily includes the act of stopping the vehicle. *Id.* at 817. The evidence established that the bus was transporting passengers and the driver was in the bus when the accident occurred. *Id.* Because the plaintiff's pleadings alleged that the driver took the affirmative action of parking the bus in a way that may have contributed to her accident, the court of appeals found the pleadings sufficient to state a cause of action under the Tort Claims Act. *Id.* The DART case is factually different because the bus was being operated or used at the moment of the plaintiff's injury and the accident directly arose from that operation or use. Further, the act of the plaintiff exiting the bus is an inherent part of the bus's function of transporting people from one location to another.

Diaz next contends that there is no requirement that the injury and the negligence be contemporaneous. In *Elgin Independent School District v. R.N.*, 191 S.W.3d 263 (Tex.App.--Austin 2006, no pet.), a five-year-old child was left asleep on a school bus and the bus was locked. The child remained on the bus for several hours. The Austin Court of Appeals held that while the bus driver's failure to unload the child was a failure of supervision rather than a "use or operation" of

the bus, the driver's action in locking the door constituted a use of the vehicle. *Id.* at 272. Diaz reasons that if locking a bus is use or operation, then so is parking a vehicle. *Elgin* can be distinguished because the child was inside the bus and the negligence had a direct impact on her. More importantly, *Elgin* was a pleadings-only case.

Finally, Diaz maintains that an injury can arise out of the use or operation of a motor vehicle which is stationary, parked, turned off, and unoccupied. He cites *Tarrant County v. English*, 989 S.W.2d 368 (Tex.App.--Fort Worth 1998, pet. denied) in support of this argument. Tarrant County purportedly spilled diesel fuel while preparing trucks to haul asphalt. The diesel fuel migrated onto the plaintiff's property and he sued for damages. The county argued there was no nexus between the operation of the trucks and the damage to the plaintiff's property because the trucks were not in use when the diesel fuel was applied. The court of appeals disagreed, holding that the trucks were in use because they were being prepared to transport and release asphalt onto county roads. *Id.* at 375-76. Here, CISD's vehicle was not being prepared for use or operation.

We turn now to the authorities cited by CISD. In *LeLeaux v. Hamshire-Fannett Independent School District*, 835 S.W.2d 49 (Tex. 1992), a student who had traveled to a band contest in a school bus entered the parked and empty school bus through the rear emergency door. She stood up in the doorway and struck her head on the door frame. Emphasizing that the bus was parked and not in operation, the Supreme Court held that the student's injury did not arise out of the operation or use of the school bus. *Id.* at 52. The bus was nothing more than the place where the student happened to injure herself. *Id.* at 51.

In *Texas Department of Public Safety v. Grisham*, 232 S.W.3d 822 (Tex.App.--Houston [14th Dist.] 2007, no pet.), the plaintiff was traveling in the right lane of a road when he approached the scene of an accident. A vehicle involved in the accident was partially obstructing the left lane and

a DPS cruiser was parked on the right shoulder of the roadway with its emergency lights activated. The plaintiff changed into the left lane and struck the disabled vehicle. The Fourteenth Court of Appeals held that sovereign immunity was not waived because the DPS cruiser did not actually cause the plaintiff's injury; it merely furnished the condition that made the plaintiff's injury possible. *Id.* at 827.

In *City of Kemah v. Vela*, 149 S.W.3d 199 (Tex.App.--Houston [14th Dist.] 2004, pet. denied), a police officer made a traffic stop and parked behind the plaintiff's car in a left-turn lane. The officer placed the plaintiff in the back seat of the patrol car. A second police officer parked his patrol car behind the first and activated his emergency lights. A truck subsequently drove into the back of the second patrol car which in turn struck the first patrol car injuring the plaintiff. The plaintiff alleged that his injuries arose from the negligent parking of the patrol cars in the turning lane. The Fourteenth Court of Appeals determined that the plaintiff's injuries did not arise from the use or operation of the patrol cars and that the parking of the patrol cars merely furnished the condition that made the injuries possible. *Id.* at 204-05.

We recognize that these authorities are inherently fact specific and often courts must fit square pegs into round holes. But the undisputed evidence submitted by CISD established that the motor vehicle was parked and the engine was disengaged. It was in no way being used when Robert ran into it and tragically injured his eye. We conclude that it was not being used or operated within the meaning of those terms under the Texas Tort Claims Act. *See LeLeaux*, 835 S.W.2d at 51 (defining use and operation). The vehicle only furnished the condition that made the injury possible. *See Texas Department of Public Safety v. Grisham*, 232 S.W.3d at 827; *City of Kemah v. Vela*, 149 S.W.3d at 204-05. We overrule Issues Two and Three and affirm the judgment of the trial court below.

February 3, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.