**TEXAS JUVENILE JUSTICE DE-PARTMENT f/k/a Texas Youth Commission, Appellant**

v.

**PHI, INC., Appellee**

**NO. 02-17-00013-CV, NO. 02-17-00014-CV**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: December 21, 2017

ATTORNEYS FOR APPELLANT: KEN PAXTON, ATTORNEY GENERAL OF TEXAS; JEFFREY C. MATEER, FIRST ASSISTANT ATTORNEY GENERAL; BRANTLEY STARR, DEPUTY FIRST ATTORNEY GENERAL; JAMES E. DAVIS, DEPUTY ATTORNEY GENERAL FOR CIVIL LITIGATION; KARA L. KENNEDY, CHIEF TORT LITIGATION DIVISION; KEVIN D. MOLINA, ASSISTANT ATTORNEY GENERAL TORTS LITIGATION, DIVISION AUSTIN, TEXAS.

ATTORNEYS FOR APPELLEE: STEVEN D. SANFELIPPO, ROSS CUNNINGHAM, REBECCA SOLOMAN CUNNINGHAM SWAIM, LLP DALLAS, TEXAS.

PANEL: SUDDERTH, C.J.; KERR and PITTMAN, JJ.

## OPINION

ELIZABETH KERR, JUSTICE

Despite the saying that "a helicopter doesn't fly, it just beats the ground into submission," a chopper can be humbled by the decidedly less-glamorous Ford Econo-

line van when they go mano a mano on the ground. That's what happened here.

Appellee PHI, Inc.'s parked helicopter was damaged when a van owned by Appellant Texas Juvenile Justice Department f/k/a Texas Youth Commission rolled into it. PHI sued TJJD, claiming that the Texas Tort Claims Act waived TJJD's sovereign immunity because a TJJD employee's negligent operation or use of a motor vehicle caused PHI's damages. The trial court agreed, and denied TJJD's plea to the jurisdiction and motion for summary judgment.[1]

Although the facts of this case are novel, the legal principles are reasonably well-settled and drive us to reverse the trial court's orders denying TJJD's jurisdictional plea and summary-judgment motion and to render judgment dismissing PHI's claims for lack of subject-matter jurisdiction.

### Background

PHI provides helicopter-transport services, including medical-transport services between hospitals. On June 20, 2014, a PHI crew flew its 2013 Bell 407 helicopter to North Texas Regional Medical Center in Gainesville, Texas, to pick up a patient, and landed on the hospital's ground-level helipad. As the PHI flight crew was securing the patient and preparing for takeoff, TJJD employee Christopher Webb, driving TJJD's 2008 Ford Econoline 15-passenger van, dropped another TJJD employee and a Gainesville State School resident off at the hospital's emergency-room entrance and then parked the van in a hospital parking lot adjacent to the helipad. Webb stated that after pulling the

van into a parking space, he put it in park, turned off the ignition, removed the key, locked the doors, and got out.

As Webb was walking toward the hospital's emergency-room entrance, the empty van—which was on a slightly inclined parking space—began rolling toward the helipad. Webb ran after the van and tried in vain to unlock the door so that he could get in and avert the inevitable collision. A PHI paramedic ran to help, but together they could not stop its momentum. The van crashed into the helicopter's tail and horizontal stabilizer, causing nearly $74,000 in damages. The impact also broke the van's windshield and damaged its roof, but happily, no one was hurt.

The PHI paramedic then used the van's emergency brake to secure it after finding that he could not put the van in park. Arriving soon after, TJJD Superintendent Paul Bartush looked through the now-motionless van's window and, according to his affidavit, saw that the "vehicle gear was in the park position." A post-accident inspection revealed that the van's "shifter bushings and shift lever [were] badly worn, not allowing [the] vehicle to go fully into park or the ignition to go fully into the proper lock position." Although no one at TJJD had ever reported any specific problems with the bushings or shift levers, hours before the accident another TJJD employee (not Webb) had told TJJD's vehicle-control officer that "he didn't feel comfortable sending [the van] out on the highway as something wasn't quite right with it [and] that it was running rough." Based on this complaint, the vehicle-control officer submitted a work order for the van re-

---

1. The trial court signed separate orders denying TJJD's jurisdictional plea and its summary-judgment motion. TJJD has appealed both orders, and we assigned cause number 02-17-00013-CV to the jurisdictional-plea ap-

peal and cause number 02-17-00014-CV to the summary-judgment appeal. On TJJD's unopposed motion, we consolidated the appeals.

questing a "tune up" because it was "running ruff [sic]."

PHI sued TJJD for negligence, alleging that by and through its employees, TJJD breached its duty to maintain and to safely operate the van by

- failing to maintain the van when TJJD knew or should have known that the van's worn shifter bushings and levers kept it from truly going into park or from allowing the ignition to be properly locked;
- driving the van when it was not in a safe condition to be on the road;
- parking the van on an incline when TJJD knew or should have known that the van would not stay in park; and
- failing to engage the emergency brake when parking the van.

PHI alleged that these acts and omissions proximately caused the damages to its helicopter.

TJJD filed a combined plea to the jurisdiction and traditional motion for summary judgment, asserting that PHI's claims are barred because they do not fall within the TTCA's sovereign-immunity waiver. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011). PHI responded that TJJD's immunity is waived because PHI's injuries arose from the operation or use of a motor vehicle. *See id.* § 101.021(1)(A). After a hearing, the trial court denied TJJD's plea and summary-judgment motion. TJJD has appealed, arguing in one issue that section 101.021(1)(A) does not waive its sovereign immunity for this incident because PHI's

maintenance-related allegations do not constitute "operation or use" and because the van was not in "operation or use" at the time of the incident.

## Standard of Review

■■■ We review TJJD's combined jurisdictional plea and summary-judgment motion as a plea to the jurisdiction.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017) (permitting an interlocutory appeal from the denial of a governmental unit's plea to the jurisdiction); *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) (observing that an interlocutory appeal may be taken under section 51.014(a)(8) whether a jurisdictional argument is presented in a plea to the jurisdiction or summary-judgment motion because the right of appeal is tied to the substance of the issue raised and not to any particular procedural vehicle). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether a court has subject-matter jurisdiction is a legal question, and we review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

■■■ When a plea challenges the pleadings, we determine whether the plaintiff has met its burden of alleging facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *See id.* at 226. We construe the pleadings

---

**2.** PHI contends that this court lacks jurisdiction over TJJD's appeal from the summary-judgment order because TJJD's motion challenged the merits of PHI's claims, not just the trial court's subject-matter jurisdiction. The jurisdictional grounds raised in TJJD's summary-judgment motion are reviewable by in-

terlocutory appeal under section 51.014(a)(8). *See Swanson v. Town of Shady Shores*, Nos. 02-15-00351-CV, 02-15-00356-CV, 2016 WL 4395779, at *3 (Tex. App.—Fort Worth Aug. 18, 2016, no pet.) (mem. op.) (citing cases). We therefore restrict our review to TJJD's jurisdictional arguments.

liberally in the plaintiff's favor, accept all factual allegations as true, and look to the plaintiff's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings do not suffice to establish the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction altogether, then a jurisdictional plea may be granted without allowing a (necessarily futile) chance to amend. *See id.* at 227.

When a plea challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *Id.* If the evidence raises a fact question on jurisdiction, the trial court must deny the plea and let the factfinder resolve the question. *Id.* at 227–28. In contrast, if the evidence is undisputed or fails to raise a fact question regarding jurisdiction, the trial court must rule on the jurisdictional plea as a matter of law. *Id.* at 228.

### The TTCA's Immunity Waiver

Sovereign immunity protects the State and its agencies from both suit and liability unless the legislature has expressly waived immunity. *See State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also* Tex. Gov't Code Ann. § 311.034 (West 2013) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). The TTCA waives a governmental unit's sovereign immunity for property damage (among other things) that is "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if the damage "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1), § 101.025 (West 2011) (providing that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter" and that "[a] person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter"); *see also id.* § 101.001(3)(A) (West Supp. 2017) (defining "governmental unit" to include State agencies). Because the legislature prefers a limited immunity waiver, we must strictly construe section 101.021(1)(A)'s operation-or-use requirement. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015); *see also LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (noting that the TTCA's waiver of immunity is limited).

### TJJD's Sovereign Immunity Not Waived

In its sole issue, TJJD argues that PHI has failed to plead or prove a sovereign-immunity waiver under the TTCA because (1) "maintenance" is not "operation or use"; (2) Webb was not operating, using, or exercising control over the van at the time of the collision because the ignition was off and Webb was not in the van at the time; and (3) PHI's damages did not arise from the van's operation or use.[3] PHI responds

---

3. TJJD also asserts that PHI's allegations cannot support an immunity waiver under section 101.021(2), which waives immunity for personal injury or death—but not for property damage—caused by the condition or use of tangible personal property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). But PHI affirmatively stated in the trial court and

that (1) its negligence claims are not restricted to maintenance-related claims; (2) operation and use is not limited to driving but includes "any part of transporting persons or property, including loading and unloading and starting and stopping the vehicle"; and (3) there was a sufficient nexus between the van's operation and use and PHI's damages.

 The TTCA does not define "operation" or "use," (a void that has engendered a fair amount of litigation), but the supreme court has judicially defined "operation" to mean "a doing or performing of a practical work," and "use" to mean "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux*, 835 S.W.2d at 51 (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). The phrase "arises from" is also undefined, but the supreme court has determined that it requires a nexus between the injury and the vehicle's operation and use. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *LeLeaux*, 835 S.W.2d at 51. This nexus calls for more than mere involvement of the property; rather, the vehicle's use must have "actually caused" the injury. *Whitley*, 104 S.W.3d at 543. "Thus, as with the condition or use of property, the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998)).

 PHI has alleged that TJJD was negligent in maintaining the van. But maintenance is neither operation nor use under the TTCA. *See Mt. Pleasant Indep. Sch. Dist. v. Elliot*, No. 06-13-00115-CV, 2014 WL 1513291, at *7-9, *10 (Tex. App.—Texarkana Apr. 17, 2014, pet. denied) (mem. op) (applying the supreme court's definitions of "operation" and "use" and rejecting the assertion that "maintenance" falls within the scope of those two terms as they are used in section 101.021(1)(A)); *see also LeLeaux*, 835 S.W.2d at 51 (defining "operation" and "use"). Because PHI has thus failed to plead—and cannot plead—an immunity waiver for its maintenance-based negligence claim, we sustain this portion of TJJD's issue.

 PHI has also alleged that TJJD was negligent in driving the van when it was in an unsafe condition to be on the road, in parking the van on an incline, and in parking the vehicle without engaging the emergency brake. TJJD counters that its immunity was not waived, because the van's engine was off and no TJJD employee was in the van or using or operating the van when it rolled, driverless, into the helicopter. TJJD primarily relies on three supreme court cases—*LeLeaux*, *E.E. Lowrey*, and *Ryder*.

*LeLeaux* involved a student who had traveled to a band contest in a school bus; she hit her head when jumping up into the parked, empty bus through its rear emergency door. 835 S.W.2d at 50-51. The student and her mother sued the school district and the bus driver for negligence. *Id.* at 50. The supreme court decided that the bus was not in operation or use, within the

---

maintains on appeal that it is not relying on section 101.021(2). Because PHI has alleged only property damage, section 101.021(2) cannot waive TJJD's immunity. *See id.*; *Tex. Parks & Wildlife Dep't v. E.E. Lowrey Realty,*

*Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007) (noting that when a property's condition causes a claimant's injuries, the TTCA allows that claimant to recover damages arising only from personal injury or death).

TTCA's meaning, at the time of the student's injury:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose". The bus was nothing more than the place where Monica happened to injure herself.

*Id.* at 51 (brackets in original). And even if the school district and driver were negligent as alleged, the court concluded that the student's injuries did not arise from the alleged negligence, as she was not being loaded on or off the bus, she was not returning to her seat, she was not retrieving something from the bus or putting something on the bus, and she was not preparing to leave. *Id.* at 52. The court therefore held that because the student's injury did not arise out of the school district's or its driver's operation or use of the bus, the school district was immune from liability. *Id.*

In *E.E. Lowrey*, the plaintiffs, who owned a storage facility, sued the Texas Parks and Wildlife Department and two of its employees for negligence after one of the department's boats that was being stored in Lowrey's facility caught fire and damaged the building. 235 S.W.3d at 693–94. The plaintiffs alleged that the department's employees had negligently installed a radio, siren, and lights on the boat and argued that "the fire may have been caused by an electrical fault in the boat's wiring, which was 'use' of a motor vehicle sufficient to invoke the [TTCA]'s waiver." *Id.* But the supreme court disagreed: not only did the plaintiffs fail to allege the operation or use of a motor-driven vehicle or equipment, but their negligence claims—alleging that the department's employees left the premises while the boat's electrical wiring was in a dangerous condition—related not to the "active use or operation" of a motor vehicle or motor-driven equipment, but to the condition of State property. *Id.* at 694 (citing *Bossley*, 968 S.W.2d at 343; *LeLeaux*, 835 S.W.2d at 51). The supreme court agreed with the court of appeals that the plaintiffs failed to show a sufficient nexus between a motor vehicle's operation or use and the injury. *Id.*

In TJJD's third principal case, *Ryder*, a deputy sheriff drove up onto a berm on the right side of a highway and turned his cruiser to face oncoming traffic during a traffic stop involving an eighteen-wheeler. 453 S.W.3d at 926. The cruiser's headlights, high-beam spotlight, and emergency lights were on. *Id.* While the deputy was still positioning his cruiser, an oncoming eighteen-wheeler veered right, clipped the back of the stopped eighteen-wheeler, overturned, and caught fire, killing the oncoming truck's driver. *Id.* Ryder, the oncoming truck's owner, sued the county for negligence, alleging that the cruiser's headlights had blinded or distracted the oncoming driver. *Id.* In summarizing the TTCA's limited immunity waiver under section 101.021(1)(A), the supreme court stated that for the TTCA to apply, an employee must have been actively operating or using a motor-driven vehicle at the time of the incident. *Id.* at 927 ("To begin with, a government employee must have been actively operating the vehicle at the time of the incident." (citing *LeLeaux*, 835 S.W.2d at 52)). The county argued that the use of headlights alone was not operation or use, but the court concluded that because the deputy was driving the cruiser at the time, he was in fact "operating" it. *Id.* at 928 ("But [the deputy] was not just operating the headlights—he was driving the car."). The court went on to conclude

that Ryder had sufficiently pleaded that its injuries arose out of the deputy's use of the cruiser because his decision to point the cruiser's headlights toward oncoming traffic proximately caused Ryder's injuries. *Id.* at 928–30.

In another case that TJJD cites but does not delve into—*Diaz v. Canutillo Independent School District*—a student was injured when he ran into a parked school bus while playing touch football on a school playground. 311 S.W.3d 588, 590 (Tex. App.—El Paso 2010, no pet.). The student and his father sued the school district, alleging that an unknown district employee had negligently parked the bus "in the area of the school playground." *Id.* The appellate court remarked that because the bus was parked and the engine was disengaged, "[i]t was in no way being used when [the student] ran into it and tragically injured his eye." *Id.* at 594. Because the bus was not being operated or used within the meaning of those terms under the TTCA and because it only furnished the condition that made the injury possible, immunity was not waived. *See id.*

PHI, on the other hand, contends that it had to plead simply that a sufficient nexus existed between the van's operation or use and PHI's damages, not that a TJJD employee was inside the van when it hit the helicopter. PHI also urges that operation and use is not limited to actual driving; taking an expansive view, PHI contends instead that a vehicle's operation and use includes the acts of stopping the vehicle, parking, and using the vehicle's emergency brake, citing *Finnigan v. Blanco County*, 670 S.W.2d 313 (Tex. App.—Austin 1984, no writ).[4] There, a deputy sheriff had released the jail's only prisoner from his cell for exercise, during which time the prisoner had access to the jail's exercise yard. *Id.* at 314. When the deputy returned to the jail to check on the prisoner, he parked his patrol car near the exercise yard and left the motor running while he went inside. *Id.* The prisoner escaped from the yard, got into the car, and drove off; he was later involved in a collision that killed Elizabeth Finnigan. *Id.* In concluding that the deputy's acts constituted the operation or use of a motor vehicle, the court stated that this concept "involves the transportation of a person from one place to another, and such transportation necessarily includes the act of *stopping* the vehicle when one has reached one's destination." *Id.* at 316 (emphasis in original). In the Austin court's view, operation or use "also includes the act of leaving the motor of the car running in order that one may make a more rapid exit." *Id.* Although the "conditions which permitted [the prisoner]'s escape from the jail yard were also a cause of the accident," the court reasoned that the deputy's "allegedly negligent act in parking the running car so close to [the prisoner] proximately caused the death of Elizabeth Finnigan," as the plaintiff had pleaded, and "could serve as the basis for liability." *Id.* We note that *Finnigan* predated the supreme court's defining "operation or use." *See Lindburg*, 766 S.W.2d at 211; *see also LeLeaux*, 835 S.W.2d at 51 (quoting *Lindburg*). And in our case, in any event, the van's engine was off.

We certainly agree with PHI that *LeLeaux* and *E.E. Lowrey* are not factually identical to this case: unlike the bus in *LeLeaux*, the TJJD van was not the location of PHI's injuries but caused its injuries, and unlike the boat in *E.E. Lowrey*, the van was not in storage but was being used for transportation. But as our sister

---

4. PHI cites to the portion of *Naranjo v. Southwest Independent School District*, 777 S.W.2d 190, 192 (Tex. App.—San Antonio 1989, writ denied), that quotes *Finnigan*, but PHI is relying on *Finnigan* rather than *Naranjo*.

court recognized in *Diaz*, cases such as these "are inherently fact specific and often courts must fit square pegs into round holes." 311 S.W.3d at 594.

Here, the evidence established that Webb was not driving the van when it rolled into the helicopter. Moreover, it is undisputed that after Webb pulled the van into a parking space,[5] he turned off the ignition, removed the key, locked the door, and got out of the van; it was as Webb was walking away from the van and toward the hospital that the van began to roll and then smacked into the helicopter. In other words, Webb had altogether stopped operating or using the van before the unfortunate crash. On these facts, we conclude that Webb was not actively operating or using the van when it collided with and damaged the helicopter. Based, then, on *Ryder*'s statement that operation or use requires *active* operation or use at the time of the incident, as well as on the decisions in *LeLeaux*, *E.E. Lowrey*, and *Diaz*, we must also conclude that PHI cannot satisfy section 101.021(1)(A)'s vehicle-operation-or-use requirement because TJJD was not actively operating or using the van when it damaged PHI's helicopter. We sustain this part of TJJD's issue, which is dispositive of PHI's remaining negligence claims, and we therefore do not reach TJJD's remaining arguments. *See* Tex. R. App. P. 47.1.

### Conclusion

Having sustained the dispositive portions of TJJD's sole issue, we reverse the trial court's orders denying TJJD's plea to the jurisdiction and summary-judgment motion and render judgment dismissing PHI's claims for lack of subject-matter jurisdiction.

SUDDERTH, C.J., filed a dissenting opinion.

BONNIE SUDDERTH, CHIEF JUSTICE, dissenting.

I would affirm the trial court's ruling and hold that the final—and certainly an essential—act of operating a motor vehicle is securing it for safe non-operation by placing the vehicle in park, engaging the parking brake if circumstances warrant it, turning the engine off, exiting the vehicle, and, if circumstances warrant it, locking the doors.[1]

In this case, the facts are disputed as to whether TJJD's employee Christopher Webb properly secured the van for safe non-operation by placing it into park or engaging the parking brake due to a surface incline that may have warranted it. If Webb did not properly secure the vehicle for safe non-operation prior to ceasing the operation of the vehicle, then his negligent operation of the van is actionable under the TTCA's sovereign-immunity waiver. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2016). Accordingly, because I believe a fact issue exists to preclude the granting of TJJD's plea to the jurisdiction, I respectfully dissent.

---

5. PHI disputes that Webb *parked* the van, contending that because the van could not be put into park, he only *attempted* to park it. And although Webb stated that he "placed the vehicle in 'Park,'" the PHI paramedic claimed that after the crash, he had to engage the emergency brake specifically because he could not put the van into park.

1. *See* Tex. Transp. Code Ann. § 545.404 (West Supp. 2017) ("[A]n *operator* may not leave a vehicle unattended without (1) stopping the engine; (2) locking the ignition; (3) removing the key from the ignition; (4) setting the parking brake effectively; and (5) if standing on a grade, turning the front wheels to the curb or side of the highway." (emphasis added)).