# IN THE SUPREME COURT OF TEXAS

No. 18-0099

PHI, INC., PETITIONER,

v.

TEXAS JUVENILE JUSTICE DEPARTMENT, F/K/A TEXAS YOUTH COMMISSION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued January 31, 2019**

JUSTICE BLACKLOCK delivered the opinion of the Court.

An unoccupied cargo van rolled backwards down an incline into a grounded helicopter. Fortunately, no one was harmed, though the helicopter may never be the same. Since the State of Texas owned the van, the legal issue before the Court in this interlocutory appeal is whether sovereign immunity bars the helicopter owner's claim. The court of appeals concluded that it did, over a dissent. Because we conclude that portions of the claim should have been allowed to proceed, we reverse the judgment of the court of appeals and remand the case to the trial court.

## I. Factual and Procedural Background

Petitioner is PHI, Inc., a private company that provides medical helicopter services. Respondent is the Texas Juvenile Justice Department, an agency of the State of Texas. The factual

summary below comes from evidence the parties submitted while litigating the Department's combined plea to the jurisdiction and motion for summary judgment, from which this appeal arises.

PHI owned a helicopter that flew to a hospital, the North Texas Regional Medical Center in Gainesville, Texas. The helicopter landed on a ground-level pad at the hospital. While the helicopter crew was securing a patient and preparing for takeoff, Christopher Webb, a Department employee, arrived at the hospital parking lot driving a fifteen-passenger van owned by the Department. Webb dropped off two passengers and parked the van on an incline near the helicopter. There was evidence that Webb pulled into a parking space, put the transmission in park, turned off the ignition, removed the key, and exited the van without setting the emergency brake.

As Webb walked away from the van toward the medical center entrance, the van began rolling. The van crashed into the helicopter. A PHI paramedic then used the emergency brake to secure the van after finding he could not put it in park. A Department supervisor arrived at the scene later and claimed he saw the vehicle with the shifter in the park position. A post-accident inspection found that the van's shifter bushings and shift lever were worn in a manner preventing the vehicle from going fully into park or the ignition from going fully into the locked position. However, the parties point to no evidence in the record before us that Webb was aware of the worn gear-shift mechanism. A local police officer investigated the accident. His report states that the accident occurred after the driver placed the vehicle in park and identifies factor "54" as contributing to the accident. Factor 54 is "Parked and Failed to Set Brakes." Webb filled out an accident report wherein he stated that he placed the van in park, but he did not dispute the police officer's finding that he failed to use the emergency brake. Hours before the accident, another

2

Department employee complained to a Department vehicle-control officer that he didn't feel comfortable driving the van on the highway because it was "running rough." Because of this complaint, the officer submitted a work order for a tune-up.

PHI sued the Department. It alleged the Department breached its duty to act with ordinary care in maintaining and operating the van when its employees:

- failed to maintain the van when it knew or should have known the shifter bushings and shift levers were so badly worn that they would not allow the van to go fully into park or allow the ignition to go fully into the proper locked position;
- drove the van when it was not in a safe condition to be on the road;
- parked the van on an incline when Webb knew or should have known that the van would not stay in park; and
- failed to engage the emergency brake when parking the vehicle.

The Department filed a combined plea to the jurisdiction and motion for summary judgment. The trial court denied the plea and summary-judgment motion. The Department took an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).[1] In a divided opinion, the court of appeals reversed and rendered a take-nothing judgment. 537 S.W.3d 707, 716 (Tex. App.—Fort Worth 2017). The court of appeals reviewed the record evidence and relevant case law and concluded that sovereign immunity protects the Department from PHI's claims. Specifically, the court reasoned that the Tort Claims Act's waiver of sovereign immunity for operation or use of a motor vehicle, TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A), did not apply

---

[1] For purposes of appellate jurisdiction over interlocutory orders, the court of appeals had jurisdiction over the denial of the combined plea to the jurisdiction and motion for summary judgment, regardless of how the trial-court pleading was styled, because the substance of the pleading was to raise sovereign immunity, which implicates subject-matter jurisdiction. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought."); *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) ("Thus, an interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment.").

because this provision is limited to cases where the vehicle was in "active" operation or use "at the time of the incident," 537 S.W.3d at 716 (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam)). The court held that these elements were not present because the van did not begin to roll toward the helicopter until Webb had pulled into a parking space, turned off the ignition, removed the key, locked the door, and exited the van. *Id.* The court also rejected PHI's claims alleging negligent maintenance of the van, holding that "maintenance is neither operation nor use under the [Tort Claims Act]." *Id.* at 713.

The dissenting justice reasoned that "operation" of the vehicle extends to safely securing it at the end of a trip and that "the facts are disputed as to whether [Webb] properly secured the van for safe non-operation by placing it into park or engaging the parking brake due to a surface incline that may have warranted it." *Id.* at 716 (Sudderth, C.J., dissenting).

## II. Analysis

### A. Sovereign Immunity

Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and liability. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). The Department is an agency of the State of Texas. *See* TEX. HUM. RES. CODE § 201.002; TEX. CIV. PRAC. & REM. CODE § 101.001(3)(A). Sovereign immunity therefore bars suits against the Department unless the Legislature has waived its immunity. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).

The Legislature may waive sovereign immunity by statute. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). It has enacted a limited waiver of immunity for certain tort claims in the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. The Legislature has

4

also provided that "[i]n order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE § 311.034. In determining whether a statute waives sovereign immunity, we have similarly stated that, to ensure legislative control over the waiver decision, a waiver of sovereign immunity must be clear and unambiguous. *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29, 333 (Tex. 2006).

Procedurally, the assertion of sovereign immunity implicates the trial court's jurisdiction and is properly asserted in a plea to the jurisdiction. *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). Parties may submit evidence at the plea-to-the-jurisdiction stage, and the trial court's review generally mirrors the summary judgment standard. *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004); *see also Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015). The trial court's ruling on the plea is reviewed de novo on appeal. *Klumb*, 458 S.W.3d at 8.

## B. "Operation or Use of a Motor-Driven Vehicle"

The parties agree that the only possible statutory basis for a waiver of the Department's sovereign immunity is section 101.021(1)(A) of the Tort Claims Act, which provides that "[a] governmental unit in the state is liable for . . . property damage . . . proximately caused by the

wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the property damage . . . arises from the operation or use of a motor-driven vehicle . . . ." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). The parties' principal dispute concerns whether the damage to the helicopter arose from the "operation or use" of the van.

We focus first on PHI's claim that Webb caused the accident by failing to apply the emergency brake. PHI contends that the van was parked on an incline and that Webb failed to use the emergency brake, precipitating the accident. As a preliminary matter, to establish a waiver of immunity under its emergency-brake theory of negligence, PHI must first establish that the alleged damage "arises from" Webb's failure to set the emergency brake. By requiring that the damage "arises from" the operation or use of the vehicle, the statute "requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle." *LeLeaux v. Hampshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). We have, perhaps unhelpfully, described this standard as "something more than actual cause but less than proximate cause." *Ryder*, 453 S.W.3d at 929. In any event, "[t]his nexus requires more than mere involvement of property." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). Instead, the use or operation "must have actually caused the injury." *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001).

With respect to PHI's emergency-brake allegations, the "arises from" causation element requires that Webb's negligent failure to engage the emergency brake "actually caused" the collision between van and helicopter. *White*, 46 S.W.3d at 868. Although much of PHI's evidence and argument concerns mechanical defects in the van, there was also some evidence that Webb's failure to deploy the emergency brake after parking on an incline caused the accident. For

6

example, the officer who investigated the accident concluded that the failure to deploy the brake was a contributing factor to the collision, even though, as the Department argues, there was also evidence that a worn gear-shift mechanism was a cause of the accident. Of course, there may be more than one proximate cause of an accident. *E.g.*, *First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*, 52 S.W.3d 482, 493 (Tex. 2001). We conclude that a fact issue remains as to whether the accident "arose from" the failure to set the emergency brake. At this stage of the proceedings, no more is required to satisfy section 101.021(1)(A)'s "arises from" requirement.

We turn now to whether Webb's failure to engage the emergency brake qualifies as "operation or use" of the vehicle. TEX. CIV. PRAC. & REM. CODE 101.021(1)(A). As with any statute, in construing the words "operation or use" we must look to the plain meaning of statutory text "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007). Also informing this analysis is our recognition, noted above, that waivers of sovereign immunity must be clear and unambiguous. With respect to the Tort Claims Act, we noted in *Ryder* that, "[g]iven the Legislature's preference for a limited immunity waiver, we strictly construe section 101.021's vehicle-use requirement." 453 S.W.3d at 927. More generally, "[w]e have repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012).

7

"Use" or "operation" are nothing if not common, everyday words. "[O]rdinary citizens should be able to rely on the plain language of a statute to mean what it says," particularly when the statute uses ordinary words like "use" and "operation." *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). While the multiplicity of possible fact-patterns and the vagaries of litigation can create complexity, in general courts should strive to give simple words like "operation" and "use" a simple construction, rather than converting them into terms of art intelligible only to experts in the case law applying the Tort Claims Act. We have previously defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989). We have defined "operation" as referring to "a doing or performing of a practical work." *Id.* These definitions are undoubtedly correct but not particularly enlightening here, other than to reinforce that these words should be given their everyday meaning.

In terms of the everyday experience of driving, we think it self-evident that ensuring your car will not roll away after you leave it, including engagement of the emergency brake when necessary, is an integral part of the "operation or use" of a vehicle. It seems no less a part of driving than any other act by which the driver controls the vehicle. We agree with the dissenting justice in the court of appeals that "the final—and certainly an essential—act of operating a motor vehicle is securing it for safe non-operation by placing the vehicle in park, engaging the parking brake if circumstances warrant it, turning the engine off, [and] exiting the vehicle." 537 S.W.3d at 716 (Sudderth, C.J., dissenting). PHI's allegation that Webb negligently performed this "essential" and "final" aspect of driving the van fits squarely within the textual parameters of section 101.021(1)(A).

8

If we were writing on a clean slate, there would be little more to say. But of course we are not, so we must examine prior cases interpreting the "operation or use" requirement. Our application of the statute to these peculiar facts is consistent with this precedent, although some explanation is required.

In *LeLeaux*, a school bus took students from the defendant school district to a marching band contest. The students watched other bands perform. The school bus was "parked [and] empty, with the motor off." 835 S.W.2d at 51. A student jumped onto the rear of the bus and hit her head. *Id.* We held that the injury did not arise out of the operation or use of the bus because the bus "was nothing more than the place where Monica happened to injure herself" and was "only the setting for the injury." *Id.* at 51–52. Here, by contrast, the Department's van was not simply the venue of the injury. The van itself rolled away and collided with the helicopter, and PHI alleges this happened because of the driver's negligent failure to make sure the van did not immediately roll away after he exited it. The bus *driver* in *LeLeaux* had nothing to do with the accident, whereas PHI's allegation is that the van *driver* caused the accident by negligently performing the final act of driving, which is making sure the vehicle he just finished driving wouldn't roll away.

*LeLeaux* suggested that the result might have been different on slightly different facts. It agreed with the plaintiffs that "the acts of loading and unloading students" could be viewed as "part of the transportation process," but that on the facts presented "the manner in which school district employees loaded and unloaded students had nothing to do with Monica's injury." *Id.* at 52. But here, the manner in which Webb operated his vehicle led directly to the damages PHI sustained, provided that PHI can ultimately establish, as alleged, that the failure to use the emergency brake actually caused the accident. Again, the van here was not merely the place where

the injury occurred; as alleged by PHI, the van's operation and use are directly, causally linked to the accident and the damages sustained.

Our application of the Tort Claims Act today is also consistent with *Ryder*, though one passage from that case merits explanation. In *Ryder*, two large trucks collided. Molina, the driver of one truck, was injured, and Solis, the driver of the other truck, was killed. A deputy sheriff employed by the defendant county was in the process of pulling over Molina's truck. The deputy had his car facing traffic with his lights on, and the lights allegedly blinded and distracted Solis. Molina sued Ryder, the owner of the truck Solis was driving, and Ryder filed a third-party claim against the county. 453 S.W.3d at 926. We held that the motor-vehicle exception waived immunity. We emphasized that the deputy's vehicle was still in use and under his operation when the accident occurred. *Id.* at 928. In distinguishing *LeLeaux*, we stated that "a government employee must have been actively operating the vehicle at the time of the incident." *Id.* at 927. Relying on this statement, the Department argues that because Webb had exited the van and was not "*actively* operating the vehicle *at the time of the incident*," *Ryder* bars PHI's claims. The court of appeals agreed with this argument and based its ruling almost entirely upon this statement from *Ryder*. 537 S.W.3d at 714, 716.

The text of section 101.021(1)(A) requires that the injury "arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). The statute does not explicitly require that the operation or use be "active" or that it be ongoing "at the time of the incident." Nevertheless, the Department contends that *Ryder* effectively added these two additional requirements to the requirements already found in the statutory text. Under this reasoning, it is not enough for the injury to arise from the operation or use of a vehicle. The

10

operation or use must also be (1) active and (2) ongoing at the moment of the accident. Frankly, the Department's error—and that of the court of appeals—is understandable given *Ryder*'s broad statement that "a government employee must have been actively operating the vehicle at the time of the incident." 453 S.W.3d at 927. But no court has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 872 (Tex. 2014); *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 637 (Tex. 2013).

The court of appeals did not err in *considering* whether there was "active operation at the time of the incident" when applying section 101.021(1)(A). Such an inquiry contributed to the outcome in *Ryder* and remains an important inquiry, even in this case. If securing a vehicle so it will not roll away is the final *act* of driving, then it is no stretch to consider it part of the "active operation or use" of a vehicle. As for whether the operation or use occurred "at the time of the incident," it is true that Webb was not parking the van at the very moment it rolled away, but it is undisputed that he had just exited the vehicle when it started rolling. The close temporal proximity between Webb's allegedly negligent parking, the van beginning to roll, and the collision with the helicopter satisfies the concerns underlying *Ryder*'s statement that the driver must have been "actively operating the vehicle at the time of the incident." 453 S.W.3d at 927.

The Department's error—and that of the court of appeals—lies not in treating the disputed sentence from *Ryder* as an important part of the analysis but in treating it like statutory text. In context, *Ryder*'s emphasis on active operation of the vehicle served primarily to distinguish that case from our earlier decision in *LeLeaux*, where the bus was not only empty but was nothing more than the physical place where the accident occurred. The sentence was not intended to replace the

11

statute or add elements to it, nor could it have done so. The statute itself—and only the statute—provides the governing rule of decision. *Ryder* correctly suggests that whether a government vehicle was in "active" operation "at the time of the incident" is an important consideration in determining whether an alleged injury arises from the operation or use of a vehicle. But a single sentence from that opinion is not itself the rule of decision. That role is reserved for the statute, which asks whether the injury "arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). By rigidly requiring "active" operation "at the time of the incident" as if those were elements of the statute—even in a case where application of those elements yields a result that conflicts with a common-sense reading of the statutory text—the court of appeals held PHI's claims to a stricter standard than the one provided by the Legislature. Although this error was understandable given the wording of *Ryder*, it was error nonetheless.

Under the unusual facts presented in this case, PHI has alleged injury arising from operation or use of the vehicle even though the driver was not behind the wheel at the moment the accident happened. While Webb had turned off and exited the van before it collided with the helicopter, the statute does not require in every case that the driver be in the vehicle at the precise time of the collision. The statute requires that the accident arise from the use or operation of the vehicle, and as explained above, we conclude that this language covers the allegations in question because "operation" of a vehicle includes making sure it does not roll away after it is parked.

The Department also contends that while the Act waives immunity for "use" of a vehicle, there is no waiver for *failures* to use. As the Department sees it, PHI alleges a non-actionable failure to use the emergency brake rather than an active misuse of the vehicle. Under this reasoning, failing to apply the parking brake—or any other mechanism of the vehicle—could never

12

amount to use or operation of the vehicle. True, "[t]his Court has never held that mere non-use of property can support a claim under the Texas Tort Claims Act." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996). But we cannot agree with the Department that failing to engage the appropriate brake on a vehicle is a non-actionable failure to use the vehicle. Taking the Department's reasoning to its logical conclusion would mean that a driver who rear-ends the car in front of him engages in a non-actionable failure to use the brake. Correctly using the brakes is perhaps the most important part of the safe operation of a multi-ton steel object. The reasonable reader of section 101.021(1)(A) would not envision the hyper-literal distinction the Department draws between "use" and "non-use" of a car's various components. Again, as the dissenting court of appeals justice reasoned, making sure a vehicle does not roll away when you are done with it is an essential part of the operation or use of the vehicle. Correctly using the parking brake is just as much a part of "using" or "operating" the vehicle as any other function by which a driver controls the vehicle.

For these reasons, the court of appeals erred in rejecting PHI's claims related to Webb's allegedly negligent failure to apply the parking brake so the van would not roll away.[2]

---

[2] In addition to alleging that Webb was negligent in unsuccessfully parking the van, PHI alleged the Department negligently maintained the van as an alternative basis for waiver of sovereign immunity. The court of appeals rejected this theory of waiver. 537 S.W.3d at 713. In both its petition for review and its principal brief, PHI couches its negligent-maintenance allegations as alternative grounds for reversal and states that the Court "need not reach the issue" if it reverses on the negligent-parking allegations. We decline to reach the negligent-maintenance allegations because PHI does not ask us to do so if we rule for it on the negligent-parking allegations, which we have done. While we reverse the court of appeals' judgment on other grounds, we do not thereby comment on its disposition of PHI's negligent-maintenance allegations.

13

### III. Conclusion

We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** April 26, 2019

14